# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### February 5, 2015 Session Heard at Nashville

## STATE OF TENNESSEE v. RICCO R. WILLIAMS

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Lauderdale County**
**No. 8856   Joe H. Walker, III, Judge**

---

**No. W2013-01897-SC-R11-CD – Filed July 14, 2015**

---

This appeal presents the issue of whether a trial judge is required to give a jury instruction based on our decision in *State v. White*, 362 S.W.3d 559 (Tenn. 2012), when a defendant is tried on charges of kidnapping and robbery of different victims.   The defendant, along with two accomplices, broke into a family's home while they were sleeping.   Brandishing weapons, the intruders forced the family members to remain in the living room while they ransacked the home.   The intruders later fled with money and jewelry.   At trial, a *White* jury instruction was neither requested nor given.   The jury convicted the defendant of numerous charges, including five counts of especially aggravated kidnapping of the husband, wife, and three children; aggravated burglary of the husband's residence; and two counts of aggravated robbery of the husband and wife. The Court of Criminal Appeals affirmed the convictions for especially aggravated kidnapping, aggravated burglary, and one count of aggravated robbery as to the husband and modified the conviction of aggravated robbery of the wife to aggravated assault.   On review, we remanded the case for consideration in light of *White*.   The Court of Criminal Appeals affirmed the convictions of especially aggravated kidnapping as to the three children, but, in light of *White* and *State v. Cecil*, 409 S.W.3d 599 (Tenn. 2013), reversed the convictions of especially aggravated kidnapping as to the husband and wife and remanded those charges for a new trial.   In this appeal, the defendant asserts that the trial court's failure to give a *White* jury instruction as to the remaining three convictions for the especially aggravated kidnapping of the children constituted reversible error.   In accordance with our opinion in *State v. Teats*, __S.W.3d__, No. M2012-01232-SC-R11-CD (Tenn. 2015) released contemporaneously with this opinion, we hold that the *White* jury instruction was not required as to the offenses of especially aggravated kidnapping of the three children.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed**

SHARON G. LEE, C.J., delivered the opinion of the Court, in which CORNELIA A. CLARK and HOLLY KIRBY, JJ., joined. GARY R. WADE, J., filed a separate dissenting opinion. JEFFREY S. BIVINS, J., not participating.

George D. Norton, Jr., Ripley, Tennessee, for the appellant, Ricco R. Williams.

Herbert H. Slatery III, Attorney General and Reporter; Joseph F. Whalen, Acting Solicitor General; Jeffrey D. Zentner, Assistant Attorney General; D. Michael Dunavant, District Attorney General; Joni R. Livingston and Julie K. Pillow, Assistant District Attorneys General for the appellee, State of Tennessee.

## OPINION

### I. Facts and Procedural History

In the early morning hours of June 1, 2009, Ricco R. Williams ("the Defendant") and two accomplices broke into the home that Sherita and Timothy Currie[1] shared with Mrs. Currie's three children in Ripley, Tennessee. They held the family at gunpoint in the living room and ransacked the home. When the police arrived, the intruders fled with money and jewelry. A grand jury returned a multi-count indictment against the Defendant, charging him with the following crimes: Counts 1-5 – five counts of especially aggravated kidnapping, one for each member of the family; Count 6 – aggravated burglary of Mr. Currie's residence; Count 7 – employing a firearm during the commission of a dangerous felony; Counts 8 and 9 – two counts of aggravated robbery against Mr. and Mrs. Currie; Count 10 – employing a firearm during the commission of a dangerous felony, having been previously convicted of drug possession, aggravated assault, and voluntary manslaughter; and Count 11 – possession of a firearm, having been previously convicted of a felony.

The Defendant was tried before a jury in June 2011. Evidence at trial consisted primarily of testimony from members of the Currie family and law enforcement officers. The Defendant presented no proof.

Mrs. Currie testified that, at the time of the crimes, she and her husband lived with Mrs. Currie's three children, M.R., age 19, K.R., age 17, and A.R., age 13.[2] At 1:15 a.m. on June 1, 2009, Mrs. Currie and her husband awoke to the sound of breaking glass. Mr.

_____

[1] At the time of the crimes, Mr. and Mrs. Currie were engaged to be married, and they married before the trial.

[2] To protect the anonymity of the two minor victims, we refer to all of the children by their initials.

Currie left the bedroom to investigate the cause of the noise while Mrs. Currie went to check on K.R. and A.R. in their bedroom. While in the children's bedroom, Mrs. Currie heard her husband exclaim from the living room, "Man, what the F-- y'all doing?" She then gathered K.R. and A.R., and all three made their way to the living room. Mrs. Currie heard a scuffle and, when she reached the living room, saw Mr. Currie on his knees, bleeding from two gashes in his head. M.R. remained asleep in her bedroom with the door locked.

Mr. Currie testified when he got to the living room, an assailant placed a gun to his head and told him to "drop it off," an apparent demand to give the assailant something. They began to struggle, and the assailant struck Mr. Currie twice in the head with the butt of the gun.

According to Mrs. Currie, the assailants yelled, cursed, and forced the family to sit on the couch. The assailants then repeated their demands that the family "drop it off," which Mrs. Currie took to mean that the men wanted the family to surrender drugs and/or money. She testified that the men stated, "[Y]'all mother F's are holding us up. This is our job. This what [sic] we do. We got another door we got to go kick in." The assailants then threatened to tie up Mr. Currie, put him in the trunk of a car, and "drop him off in the Mississippi River." They further threatened to tie up the family with the duct tape they had brought with them and burn the house with the family inside. Two of the assailants searched the entire house, leaving each room in disarray as they went. As the men searched the house, Mrs. Currie could hear items falling and breaking. One assailant stayed in the living room with his gun pointed at the family.

M.R. testified that she had been asleep during the incident until one of the assailants kicked in her bedroom door. The man held a gun to her head and demanded money. When she was not forthcoming with money, he began to search her room, going through her purse, and taking money and rings that he found. He then cursed at her to get up and to get her "punk a-- up there with the rest of [the family]." When she walked into the living room, M.R. saw the rest of the family sitting on the couch.

One of the unidentified assailants then took K.R. to the back of the house and told her to collect any cell phones. K.R. testified that while she was searching her mother and stepfather's bedroom for their cell phones, she noticed the landline telephone beside her. She was able to surreptitiously call 911 from the landline telephone while the assailant was temporarily distracted. The assailant eventually told K.R. to forget about the phones and go back to the living room. She stated that the assailants "got frustrated because they didn't get what they wanted, the money or anything, so they just told us forget it, and told all of us to line up in front of the window. . . . [T]hey [then] threw the duct tape down on the floor" in front of the family.

At that moment, about forty minutes into the ordeal, the family heard a knock on the front door. Mrs. Currie screamed for help, and the individual at the door identified himself as an officer with the Ripley Police Department ("RPD"). Upon hearing this exchange, the intruders panicked and appeared to be confused about which way to run. The couch was positioned in front of the front door, and the family yelled at the police officers to go to the side door off the carport. At least two of the assailants left the house through the Curries' bedroom window. Shortly after the assailants fled the house, the family heard gunshots.

Mr. and Mrs. Currie testified that several hundred dollars and some jewelry were stolen from their house. All of the family members testified that during the incident, one assailant always had a gun pointed at them and that they did not feel free to leave at any time.

K.R. testified that during the ordeal she recognized the Defendant. She had interacted with him many times because she was friends with the daughter of the person whom the Defendant was dating. K.R. stated that she recognized the Defendant's voice, his orange Tennessee Volunteer jogging pants, and his manner of walking. Moreover, she testified that while the assailants were in the house, the Defendant acted in a very distinctive manner. During previous interactions, the Defendant had played with K.R.'s hair, sometimes "pull[ing] it up." K.R. stated that when she knelt down to check on her stepfather, the Defendant ran the tire iron he was holding through her hair in the same way he had previously played with her hair. Furthermore, at one moment during the incident, the Defendant's sweatshirt hood that had been covering his head fell back, and she recognized his braids. K.R. stated that she had no doubt the Defendant was one of the assailants.

Officers Chris Bailey and Jeremy Hardee of the RPD testified that they were the first to arrive on the scene, having been dispatched after K.R.'s call to 911. The officers explained that shortly after they announced their presence, the assailants left the house and fled on foot. While fleeing, one of the assailants shot in Officer Hardee's direction, and all three assailants ultimately escaped. During the crime scene investigation, Officer Bailey found a wallet on the ground outside the window through which the assailants had escaped. The wallet contained the Defendant's driver's license, an Electronic Benefit Transfer Card, and a Walmart gift card. Sergeant Mark Crook, also of the RPD, testified that he had tagged and stored the wallet. Although the grass was wet from a heavy dew, Sergeant Crook observed that the wallet was dry.

RPD Investigator Louis Ruff testified that he collected evidence from the Curries' house the night of the crimes. Among the items he collected from the house were a tire iron, a roll of duct tape, and the magazine from a gun.

A Lauderdale County jury convicted the Defendant of five counts of especially aggravated kidnapping, one for each family member, aggravated burglary of Mr. Currie's residence, two counts of aggravated robbery of Mr. and Mrs. Currie, employing a firearm during the commission of a dangerous felony, employing a firearm during the commission of a dangerous felony having been previously convicted of aggravated assault and voluntary manslaughter, and possession of a firearm having been previously convicted of a felony. The trial court imposed an effective sentence of seventy-two years' incarceration. On direct appeal, the Court of Criminal Appeals affirmed the convictions for especially aggravated kidnapping, aggravated burglary of Mr. Currie's residence, and aggravated robbery of Mr. Currie; reduced the conviction for aggravated robbery of Mrs. Currie to aggravated assault; reversed two of the firearms convictions; dismissed the conviction of possession of a firearm by a convicted felon; and remanded the case for a new trial on two counts of employing a firearm during the commission of an aggravated burglary. *See State v. Williams*, No. W2011-02365-CCA-R3-CD, 2013 WL 167285, at *1 (Tenn. Crim. App. Jan. 14, 2013).

Upon the Defendant's application for permission to appeal to this Court, we remanded the case to the intermediate appellate court for consideration in light of *White*, 362 S.W.3d at 559 and *Cecil*, 409 S.W.3d at 599.[3] The Court of Criminal Appeals affirmed the convictions of especially aggravated kidnapping as to the three children, but, in light of *White/Cecil*, reversed the convictions of especially aggravated kidnapping as to both Mr. and Mrs. Currie and remanded those charges for a new trial. *State v. Williams*, No. W2011-02365-CCA-RM-CD, 2014 WL 60967, at *12 (Tenn. Crim. App. Jan. 7, 2014). The intermediate appellate court reasoned that the failure to give a *White* jury instruction amounts to constitutional error only when the defendant is charged with "kidnapping and an accompanying crime for which some measure of detention was necessary *against the same victim*." *Id.* at *8.

The State did not appeal the reversal and remand of the two especially aggravated kidnapping charges as to Mr. and Mrs. Currie. The Defendant appeals the Court of Criminal Appeals' holding that he is not entitled to a new trial for failure to receive a *White* jury instruction as to the three kidnapping charges of the three children. The Defendant asserts that the failure to instruct the jury pursuant to *White* constituted reversible error. We granted review in this case to determine whether a *White* jury instruction is required when a defendant is charged with committing the offenses of kidnapping and robbery against separate victims.

---

[3] The jury rendered its verdict on June 21, 2011, and we issued our decision in *White* on March 9, 2012. The *White* jury instruction requirement applies to cases already in the appellate pipeline on the date *White* was issued. *Cecil*, 409 S.W.3d at 608.

## II. Analysis

Whether a trial judge must give a *White* jury instruction when a defendant is charged with the kidnapping and robbery of different victims has been a source of confusion almost since the day we issued our decision in *White*.[4] Various panels of the Court of Criminal Appeals have construed this decision differently.[5] Today, with the

---

[4] The *White* jury instruction provides as follows:

> To establish whether the defendant's removal or confinement of the victim constituted a substantial interference with his or her liberty, the State must prove that the removal or confinement was to a greater degree than that necessary to commit the offense of [insert offense], which is the other offense charged in this case. In making this determination, you may consider all the relevant facts and circumstances of the case, including, but not limited to, the following factors:
>
> - the nature and duration of the victim's removal or confinement by the defendant;
> - whether the removal or confinement occurred during the commission of the separate offense;
> - whether the interference with the victim's liberty was inherent in the nature of the separate offense;
> - whether the removal or confinement prevented the victim from summoning assistance, although the defendant need not have succeeded in preventing the victim from doing so;
> - whether the removal or confinement reduced the defendant's risk of detection, although the defendant need not have succeeded in this objective; and
> - whether the removal or confinement created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense.

*White*, 362 S.W.3d at 580-81 (footnote omitted); *see also* 7 Tenn. Prac. Pattern Jury Instr. T.P.I.-Crim. 8.01-.03, 8.05.

[5] Some panels of the Court of Criminal Appeals have held that a *White* jury instruction is not required when the charges of kidnapping and an accompanying offense do not involve the same victim. *See, e.g.*, *State v. Holman*, No. E2012-01143-CCA-R3-CD, 2014 WL 295610, at *12 (Tenn. Crim. App. Jan. 27, 2014); *State v. Teats*, No. M2012-01232-CCA-R3-CD, 2014 WL 98650, at *23 (Tenn. Crim. App. Jan. 10, 2014); *State v. Mathis*, No. M2011-01096-CCA-R3-CD, 2013 WL 4774130, at *9 (Tenn. Crim. App. Sept. 5, 2013); *see also State v. Elliott*, No. M2001-01990-CCA-R3-CD, 2002 WL 31528538, at *4 (Tenn. Crim. App. Nov. 15, 2002) ("[W]hen the robbery victim and the kidnapping victim are two different persons, the issue is better characterized as a question of whether sufficient evidence exists to sustain a conviction for aggravated kidnapping."). Other panels have held that a *White* jury instruction is required when kidnapping and certain accompanying charges involve different victims. *See, e.g.*, *State v. Pryor*, No. E2012-02638-CCA-R3-CD, 2014 WL 1516525, at *9-10 (Tenn. Crim. App. Apr. 17, 2014); *State v. Bowman*, No. E2012-00923-CCA-R3-CD, 2013 WL 4680402, at *15 (Tenn. Crim. App. Aug. 29, 2013) ("Our [S]upreme [C]ourt never said in the *Anthony*/*Dixon*/*White* line of cases that the fact that the victim of the kidnapping was different than the named victim of the accompanying felony eliminated the need for due process analysis."); *see also Holman*, 2014 WL 295610, at *13 (Ogle, J., concurring in part

release of our decisions in this case and *State v. Teats*, No. M2012-01232-SC-R11-CD, we resolve that uncertainty.

In *Teats*, the defendant, along with an accomplice, entered the back door of a Shoney's restaurant. The assailants forced the restaurant manager to open the restaurant's money drawer after confining four employees to a back storage area of the restaurant. The defendant was charged with aggravated robbery of the manager and four counts of especially aggravated kidnapping of the four employees. We held that a *White* jury instruction was not required when the robbery and kidnapping were perpetrated against different victims. We reasoned that the due process concerns articulated in *White* are not implicated when there is no accompanying crime, along with kidnapping, that involves some inherent confinement of the same victim. *See Teats*, No. M2012-01232-SC-R11-CD (citing *White*, 362 S.W.3d at 580). For charges of kidnapping and robbery of separate victims, there is no risk that a defendant will be convicted of confining a victim only long enough to rob him. Further, there is no risk that the charged crime of robbery "could literally overrun" the crime of kidnapping. Simply put, where a defendant kidnaps one victim while robbing another, the due process concerns articulated in *White* are not present, as the kidnapping of one or more victims can never be "essentially incidental" to an offense perpetrated against a different victim or victims. *See White*, 362 S.W.3d at 580.

We now apply our holding in *Teats* to the facts in this case. The proof established that while the Currie family was asleep, the Defendant and two accomplices broke into the family's home. Armed with guns and a tire iron, the intruders threatened the family members, struck Mr. Currie on the head, and forced Mr. and Mrs. Currie and two of the children to stay in the living room at gunpoint. The assailants ransacked the house. One assailant kicked in the bedroom door of the oldest child, who was asleep, and forced her to join the other family members, who were being held at gunpoint. One of the children was able to summon the police after she was sent to collect the family's cellular phones. When the police arrived, the Defendant and his accomplices fled with money and jewelry. For this criminal episode, the Defendant stood trial and was convicted of multiple charges, including the especially aggravated kidnappings of each of the family members, the aggravated burglary of Mr. Currie's residence, and the aggravated robbery of Mr. and Mrs. Currie. On appeal, the conviction for aggravated robbery of Mrs. Currie was modified to aggravated assault. On subsequent appeal, the Defendant was granted a new trial as to the charges of especially aggravated kidnapping of Mr. and Mrs. Currie because a *White* jury instruction was not given at trial.

---

and dissenting in part); *Teats*, 2014 WL 98650, at *30-32 (Tipton, P.J., dissenting); *Williams*, 2014 WL 60967, at *12-16 (Witt, J., concurring and dissenting).

The only convictions at issue in this appeal are the three convictions for especially aggravated kidnapping of the three children. For these crimes, there was no offense accompanying the kidnapping charges that involved any inherent confinement of the three children. These three kidnapping charges involved different victims—the three children—than those named in the robbery charges—Mr. and Mrs. Currie. Therefore, based on our holding in *Teats*, the trial judge was not required to give a *White* jury instruction as to the charges of especially aggravated kidnapping of the three children.

## Conclusion

The Defendant's three convictions for especially aggravated kidnapping are affirmed. This cause is remanded for any necessary proceedings in the trial court. It appearing from the record that the Defendant is indigent, the costs of this appeal are assessed to the State of Tennessee.

_____
SHARON G. LEE, CHIEF JUSTICE