FILED

11/12/2025

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 29, 2025

**STATE OF TENNESSEE v. TIMOTHY D. STANTON**

**Appeal from the Criminal Court for Knox County**
**No. 124478     Hector I. Sanchez, Judge**

_____

**No. E2024-01801-CCA-R3-CD**

_____

A Knox County jury convicted the Defendant, Timothy Stanton, of aggravated kidnapping, aggravated assault, and domestic assault. The trial court imposed an effective sentence of twelve years' incarceration. On appeal, the Defendant argues that the trial court erred in denying his motion for a judgment of acquittal upon conclusion of the State's case. He also asserts that his conviction for aggravated kidnapping cannot stand because the victim's confinement was merely incidental to the accompanying assault under *State v. White*, 362 S.W.3d 559 (Tenn. 2012). Upon our review, we respectfully affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Criminal Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which JILL BARTEE AYERS and KYLE A. HIXSON, JJ., joined.

Gerald L. Gulley, Jr. (on appeal) and Julie Kuykendall (at trial), Knoxville, Tennessee, for the appellant, Timothy D. Stanton.

Jonathan Skrmetti, Attorney General and Reporter; G. Kirby May, Assistant Attorney General; Charme P. Allen, District Attorney General; and Debbie Malone and Sean Roberts, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

The victim and the Defendant had been friends for many years before beginning a dating relationship in 2022. After initially living with the victim's mother, the couple purchased a camper, placed it on the mother's property, and moved into it.

On December 31, 2022, the victim's mother prepared supper for herself, the Defendant, and the victim. The victim ate with her mother, while the Defendant remained in the camper. Later that evening, when the victim came back to the camper, the Defendant confronted her about messages on her phone. The argument escalated into physical violence. The Defendant struck her repeatedly in the face, ribs, and body. The victim described these strikes as "too many" to count. At one point, he pressed her face into the mattress and held his forearm against the back of her neck, making it difficult for her to breathe.

Throughout the night, the victim tried repeatedly to leave the camper. Each time, the Defendant prevented her escape by standing at the door, pushing her back, or forcing her into the bedroom area. When she pretended to be ill to get outside, he blocked her exit. On another occasion, he picked her up and threw her into a cabinet. The episode continued for nearly seven and a half hours.

When the victim eventually fell asleep, she awoke to find a rope tied from the camper door to the sink, preventing her escape. Around 7:00 a.m., the Defendant told her that she could not go to work because they needed to find somewhere for her to "heal up." Once outside, the victim distracted him, ran to her mother's home, and pounded on the door. Her mother described her daughter as "[a]ll swelled up, black, blue, purple, you name it." The Defendant then drove away in his truck.

The victim was taken to Tennova Hospital, where medical staff documented multiple serious injuries, including fractured ribs, orbital fractures, swelling, and extensive bruising. She reported to hospital personnel that the Defendant had beaten, choked, and restrained her beginning around midnight. Law enforcement photographed her injuries.

On April 20, 2023, a Knox County grand jury charged the Defendant with aggravated assault, domestic assault, and aggravated kidnapping. A trial was held in March

2024, during which the State presented the victim and other witnesses who testified to the above facts.

At the conclusion of the trial, the jury found the Defendant guilty of each offense as charged, and the trial court imposed an effective sentence of twelve years. Thereafter, the Defendant filed a timely motion for a new trial, which the trial court denied on November 12, 2024. He filed a timely notice of appeal twenty-three days later. *See* Tenn. R. App. P. 4(a).

## ANALYSIS

In this appeal, the Defendant raises two issues. First, he argues that the trial court erred in denying his motions for judgment of acquittal made after the close of the State's proof. *See* Tenn. R. Crim. P. 29. Second, he contends that the evidence is insufficient to support his aggravated kidnapping conviction because the proof did not establish that the victim's confinement was sufficiently independent of the accompanying assault to sustain a separate conviction.[1] *See State v. White*, 362 S.W.3d 559 (Tenn. 2012).

We address each of these issues in turn.

### A.   MOTION FOR JUDGMENT OF ACQUITTAL

The Defendant first argues that the trial court erred in denying his motion for judgment of acquittal at the close of the State's proof. The State responds that the Defendant waived this issue by presenting evidence after the trial court denied the motion. We agree with the State.

---

[1] The Defendant's issue statement and argument heading also reference his conviction for aggravated assault. However, the body of his brief argues only that the assault conviction should be vacated and remanded for a new trial based on the *White* issues related to the aggravated kidnapping conviction. Apart from that contention, he presents no argument that the evidence was legally insufficient to establish any essential element of the aggravated assault or domestic assault convictions.

Accordingly, we limit our sufficiency review to the claim raised with respect to the aggravated kidnapping conviction. To the extent the brief purports to raise any additional sufficiency challenges, we agree with the State that those issues would be waived due to the absence of supporting argument, citation to authority, or references to the record. *See* Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b); *State v. Hamilton*, No. W2023-01127-CCA-R3-CD, 2024 WL 4130757, at *5 (Tenn. Crim. App. Sept. 10, 2024), *perm. app. denied* (Tenn. Feb. 20, 2025).

A motion for judgment of acquittal challenges whether the evidence is legally sufficient to support a conviction beyond a reasonable doubt. *See* Tenn. R. Crim. P. 29(b). When a trial court denies a Rule 29 motion midtrial, a defendant may preserve appellate review of the denial only by resting after the State's proof and declining to present further evidence. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007); *State v. Collier*, 411 S.W.3d 886, 893 (Tenn. 2013). If the defendant offers proof after the Rule 29 motion has been denied, he or she waives appellate review of the trial court's denial. *See Collier*, 411 S.W.3d at 893.

Here, after the State rested, the Defendant moved for a judgment of acquittal, arguing that the evidence was insufficient to support convictions for both aggravated assault and aggravated kidnapping. The trial court denied the motion and permitted the jury to consider the charges. The Defendant then elected to present at least one witness in his case-in-chief before resting.

Because the Defendant presented evidence following the denial of his Rule 29 motion, he waived any right to appellate review of that ruling. *Collier*, 411 S.W.3d at 893. Consequently, the only question properly before this Court is whether the evidence is legally sufficient to support the Defendant's conviction for aggravated kidnapping. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We address this question next.

## B.     LEGAL SUFFICIENCY OF THE CONVICTING EVIDENCE

The Defendant next argues that the evidence is legally insufficient to support his conviction for aggravated kidnapping. More specifically, he asserts that the proof did not establish that the victim's confinement was sufficiently independent of the aggravated assault to sustain a separate conviction. The State responds that the evidence fully supports the jury's verdict because the Defendant removed and confined the victim "above and beyond that which was necessary to consummate the aggravated assault." We agree with the State.

### 1.     Standard of Appellate Review

"The standard for appellate review of a claim challenging the sufficiency of the State's evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Miller*, 638 S.W.3d 136, 157 (Tenn. 2021) (quoting

*Jackson*, 443 U.S. at 319). This standard of review is "highly deferential" in favor of the jury's verdict. *See State v. Lyons*, 669 S.W.3d 775, 791 (Tenn. 2023). Indeed, when making that determination, the State "is entitled to the strongest legitimate view of the evidence and any reasonable inferences that may be drawn from it." *State v. Rimmel*, 710 S.W.3d 640, 645 (Tenn. 2025) (citation and internal quotation marks omitted).

To that end, "[w]e do not reweigh the evidence, because questions regarding witness credibility, the weight to be given the evidence, and factual issues raised by the evidence are resolved by the jury as the trier of fact." *State v. Curry*, 705 S.W.3d 176, 183 (Tenn. 2025) (citations omitted). "The standard of review is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (citation and internal quotation marks omitted).

### 2. Aggravated Kidnapping

"The first step in evaluating the sufficiency of the evidence is to identify the elements of the offense." *See Rimmel*, 710 S.W.3d at 646. As charged in this case, the offense of aggravated kidnapping is "false imprisonment . . . committed . . . [w]here the victim suffers bodily injury." Tenn. Code Ann. § 39-13-304(a)(4) (2025). Bodily injury "includes a cut, abrasion, bruise . . . or disfigurement, and physical pain . . . ." *Id.* § 39-11-106(a)(3) (2025). False imprisonment occurs when a person "knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." *Id.* § 39-13-302 (2025). "[A] person acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." *Id.* § 39-11-106(a)(23). Removal or confinement is unlawful when it is "accomplished by force, threat or fraud." *Id.* § 39-13-301(15) (2025).

In *State v. White*, 362 S.W.3d 559 (Tenn. 2012), our supreme court addressed due process considerations that arise when kidnapping accompanies another felony such as robbery, rape, or assault. Thus, when a defendant is charged with kidnapping and with an accompanying felony, the removal or confinement must have "criminal significance above and beyond that necessary to consummate some underlying offense, such as robbery or rape," in order to sustain the conviction for especially aggravated kidnapping. *White*, 362 S.W.3d at 577. The *White* court held:

> [T]he legislature did not intend for the kidnapping statutes to apply to the removal or confinement of a victim that is essentially incidental to an accompanying felony, such as rape or robbery. This inquiry, however, is a

question for the jury after appropriate instructions, which appellate courts review under the sufficiency of the evidence standard as the due process safeguard.

*Id.* at 562.

Importantly, if the confinement or removal associated with a kidnapping-related charge is merely incidental to accomplishing another felony, the defendant cannot be convicted of especially aggravated kidnapping in addition to the underlying felony. *State v. Alston*, 465 S.W.3d 555, 562 (Tenn. 2015). In other words, the State "must prove that the removal or confinement was to a greater degree than that necessary" to commit the other charged felonies. *State v. Knight*, No. W2021-00159-CCA-R3-CD, 2022 WL 1567457, at *5 (Tenn. Crim. App. May 18, 2022), *perm. app. denied* (Tenn. Sept. 29, 2022). The holding of *White* "was intended to address the due process concerns that arise when a defendant is charged with kidnapping a victim and other crimes, such as robbery, rape, or assault, that involve some inherent confinement of that victim." *State v. Teats*, 468 S.W.3d 495, 503 (Tenn. 2015).

To guide the jury's determination, the *White* Court identified several non-exclusive factors, including (1) the nature and duration of the confinement; (2) whether it occurred during the commission of the accompanying offense; (3) whether the interference with liberty was inherent in that offense; (4) whether the confinement prevented the victim from summoning help; (5) whether it reduced the risk of detection; and (6) whether it increased the victim's risk of harm. *White*, 362 S.W.3d at 580-81. The sufficiency of a victim's removal or confinement to support a separate conviction for kidnapping is a question of fact for the jury, which must receive a proper *White* instruction. *Id.* at 578-80; *State v. Cecil*, 409 S.W.3d 599, 613 (Tenn. 2013) ("[T]he question of whether the removal or confinement of the victim was essentially incidental to the accompanying offense of assault is one for the jury to decide as a matter of fact[.]").

In this case, the trial court provided a complete *White* instruction, and the Defendant does not challenge the instruction's propriety. As such, "this Court reviews the [D]efendant's claim under the sufficiency of the evidence standard." *State v. Martin*, No. M2024-00189-CCA-R3-CD, 2025 WL 1576144, at *7 (Tenn. Crim. App. June 4, 2025), *no perm. app. filed*; *State v. Macken*, No. M2022-01809-CCA-R3-CD, 2024 WL 3633844, at *7 (Tenn. Crim. App. Aug. 2, 2024), *perm. app. denied* (Tenn. Feb. 20, 2025).

Viewed in the light most favorable to the State, the evidence established that the victim attempted to leave the camper several times throughout the night, but each time the Defendant blocked her exit, pushed her back, or physically threw her into the bedroom area. When she feigned illness in an effort to escape, he again prevented her from leaving. After the victim eventually fell asleep, she awoke to discover that the Defendant had tied a rope from the camper door to the sink, physically barring her from leaving the small space.

Although the confinement and the assaults occurred during the same general episode, the record reflects discrete acts of restraint—blocking exits, forcing the victim back into the camper, and securing the door with a rope—that occurred before, during, and after the physical attacks. The jury could reasonably find that these actions extended beyond the immediate commission of the assault and represented an ongoing effort to control and isolate the victim. These acts of restraint demonstrated a sustained confinement that was not merely incidental to the underlying offense. *See, e.g.*, *State v. Williams*, No. M2016-00568-CCA-R3-CD, 2017 WL 1063480, at *5 (Tenn. Crim. App. Mar. 21, 2017) (affirming separate nature of confinement from assault when, after initial assaults, the "[d]efendant repeatedly prevented [the victim] from leaving the apartment by grabbing her and slamming her body against walls and furniture."), *perm. app. denied* (Tenn. July 18, 2017).

The proof further established that the Defendant's conduct prevented the victim from summoning help, reduced his risk of detection, and increased the victim's risk of harm. The camper sat only a short distance from the victim's mother's residence, yet the Defendant's repeated obstruction and the rope across the door effectively isolated her through the night and prevented her from obtaining assistance. By confining her until morning, the Defendant prolonged her exposure to danger and delayed necessary medical attention. *See Martin*, 2025 WL 1576144, at *7 (affirming that kidnapping was "more than merely 'incidental' to the assault," in part, when the confinement prevented medical attention for the assault injuries). When the victim escaped, she was visibly swollen and bruised, and medical personnel later documented multiple fractures and other injuries requiring treatment.

From this evidence, a rational trier of fact could conclude that the Defendant's confinement had criminal significance independent of the assault. His deliberate prevention of escape and the heightened risk of harm satisfied the factors identified in *White*. *See also State v. King*, 703 S.W.3d 738, 763 (Tenn. Crim. App. 2024) (affirming conviction for aggravated assault when the confinement "prevented the victim from summoning assistance, reduced the Defendant's risk of detection, and increased the

victim's risk of harm, and that the confinement of the victim, therefore, was not merely incidental to the rape"). Accordingly, the evidence was legally sufficient to establish that the Defendant knowingly and unlawfully confined the victim so as to substantially interfere with her liberty, and the conviction for aggravated kidnapping is supported beyond a reasonable doubt.

Although the Defendant argues that the proof did not clearly establish the duration or extent of the confinement, "[t]he statutory elements of aggravated kidnapping do not require a finding that the Defendant moved the victim any specific distance or restrained her for any particular length of time in order for the Defendant's actions to substantially interfere with the victim's liberty." *King*, 703 S.W.3d at 763. Based on the evidence presented, we conclude that the record fully supports the jury's verdict.

The Defendant does not challenge any other element of his conviction for aggravated kidnapping. Accordingly, we hold that the evidence is legally sufficient to sustain his conviction. The Defendant is not entitled to relief.

## CONCLUSION

In summary, we hold that the Defendant waived appellate review of the trial court's denial of his Rule 29 motion for judgment of acquittal by presenting proof after that ruling. We further hold that the evidence is legally sufficient to support the Defendant's conviction for aggravated kidnapping. Accordingly, we respectfully affirm the judgments of the trial court.

s/ *Tom Greenholtz*
TOM GREENHOLTZ, JUDGE