# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### February 5, 2015 Session

## STATE OF TENNESSEE v. JEROME MAURICE TEATS

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Davidson County**
**No. 2009D2955    Steve R. Dozier, Judge**

_____

**No. M2012-01232-SC-R11-CD – Filed July 14, 2015**

_____

We granted review in this case to determine whether a trial judge is required to give a jury instruction based on our decision in *State v. White*, 362 S.W.3d 559 (Tenn. 2012), when a defendant is tried on charges of kidnapping and robbery of different victims. The defendant and an accomplice forced their way into the back door of a restaurant, threatened the employees at gunpoint, and ordered them into a back storage area. While the accomplice guarded these employees, the defendant forced the restaurant manager to take him to the cash drawer, where he took the restaurant's money. The defendant was indicted for aggravated robbery of the store manager and four counts of especially aggravated kidnapping of the other four employees. A jury convicted the defendant of all charges. On appeal, the defendant asserted that the trial judge's failure to give the *White* jury instruction was reversible error. The Court of Criminal Appeals affirmed the convictions. We hold that a *White* jury instruction is not required when a defendant is charged with the offenses of kidnapping and robbery of different victims.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed**

SHARON G. LEE, C.J., delivered the opinion of the Court, in which CORNELIA A. CLARK and HOLLY KIRBY, JJ., joined. GARY R. WADE, J., filed a separate dissenting opinion. HOLLY KIRBY, J., filed a separate concurring opinion. JEFFREY S. BIVINS, J., not participating.

Patrick T. McNally, Nashville, Tennessee, for the appellant, Jerome Maurice Teats.

Herbert H. Slatery III, Attorney General and Reporter; Joseph F. Whalen, Acting Solicitor General; Jeffrey D. Zentner, Assistant Attorney General; Torry Johnson, District Attorney General; and Rachel Sobrero and Pamela Anderson, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### I.    Facts and Procedural History

Shortly before six o'clock on the morning of May 18, 2009, Jerome Maurice Teats ("the Defendant") and Tirrone Akillia Simpkins ("the accomplice") forced their way into the back door of a Shoney's restaurant in Nashville. Armed with guns, they threatened four employees in the kitchen area, forced them to gather in a storage area in the back of the kitchen, and told them to put their heads down and not to move. As the accomplice guarded these employees, the Defendant forced the Shoney's manager to take him to the restaurant's money drawer. After taking the money, the intruders fled on foot but were soon apprehended by police. A grand jury indicted the Defendant for aggravated robbery of the Shoney's manager and four counts of especially aggravated kidnapping of the four Shoney's employees.[1]

During a four-day trial from October 31 to November 3, 2011, fourteen witnesses testified for the State. Francisco Carrizosa Perez, a cook and food preparer at Shoney's, testified that on the morning of May 18, 2009, as he opened the restaurant's back door to take out some trash, two men came to the door. One man, later identified through trial testimony as the Defendant, was wearing a mask and had a pistol. The Defendant, pointing the pistol at Mr. Perez's head, told Mr. Perez not to look at him and to close his eyes and walk down the hallway leading to the storage area. Mr. Perez followed his orders. Meanwhile, the other intruder, who was not wearing a mask and was later identified as the accomplice, brought the other employees, Dora Delacruz Moreno, Arcelia Ruiz, and Teresa Diane Cline, to the storage area.[2] Later the store manager came to the area, where the group sat and waited with their heads down until the intruders left the store.

Arcelia Ruiz, a food preparer at Shoney's, testified that the morning of May 18, 2009, was the worst day of her life. She was in the kitchen preparing food, when she heard Mr. Perez make a noise as if he were scared. She turned around and saw two men enter the back of the restaurant. One of the men, identified at trial as the Defendant, had his face covered, and both men were carrying guns. She saw the Defendant put a gun to Mr. Perez's head while his accomplice pointed a gun at her. The accomplice screamed at

---

[1] The accomplice was also indicted. His case was severed before trial, and he later pleaded guilty to all charges. *See Simpkins v. State*, No. M2012-01558-CCA-R3-PC, 2013 WL 775957, at *1 (Tenn. Crim. App. Feb. 28, 2013).

[2] Three of the Shoney's employees testified through an interpreter. Ms. Cline passed away before trial, and the Shoney's manager was unavailable. The jury heard a 911 call, wherein the caller, identified as "Teresa," reported that the restaurant had just been robbed by men with guns. The caller further stated that they had been put into the stockroom and told to "get in the corner."

Ms. Ruiz not to look at him and asked where the office was located. When she told him the manager was in the office, the Defendant led Mr. Perez to the back storage area and then proceeded to the office. The accomplice led Ms. Ruiz to the storage area where Mr. Perez was waiting. Pointing the pistol at Ms. Ruiz and Mr. Perez, the accomplice asked how many people were in the restaurant. As other employees arrived in the kitchen, the accomplice ordered them at gunpoint to the storage area. Continuing to guard the four employees, the accomplice told them "not to move." Eventually, the manager came back and told the employees that the men were going to leave. Ms. Ruiz then heard a voice tell them all to "bow down," and the Defendant and his accomplice left.

Dora Delacruz Moreno, a Shoney's employee, testified that on the morning of May 18, 2009, she was in the front of the restaurant preparing the buffet when the intruders entered the restaurant. As she was heading toward the back, she saw the Defendant taking the manager toward the restaurant's safe. The man was speaking strongly to the manager, but Ms. Moreno could not understand what he was saying. Ms. Moreno then walked to the kitchen, where the accomplice pointed his gun at her. She could not understand what the man was saying, so she stood there until another employee, Ms. Cline, came and led her to the back with the others. Ms. Moreno's head was down, but she could see the man's feet. He was standing by the back door, blocking their exit, and was waving a gun back and forth. Eventually, the manager arrived and gestured for all of the employees to get down, and the two intruders left. Ms. Moreno estimated that they were in the storage area for a total of about eight minutes, staying there four or five minutes after the men were gone.

Jack Liev, a frequent patron of Shoney's, testified that on May 18, 2009, he arrived at the restaurant a couple of minutes before it opened for business. When he attempted to enter, he noticed that the inner doors of the foyer were locked, which he thought was unusual. He was then met by the manager who frantically explained that the restaurant had just been robbed and asked Mr. Liev to call the police. Mr. Liev called 911 from the parking lot. While waiting for the call to be answered, the manager pointed out one of the suspects, who was walking down the street, wearing a black hoodie. As Mr. Liev talked to the 911 operator, he got into his truck and followed the person, attempting to keep him in his sight. When officers arrived, Mr. Liev directed them to the area he last saw the suspect and returned to Shoney's.

Officer Derek Smith, a patrol officer with the Metropolitan Nashville Police Department ("MNPD"), was the first officer to arrive at the scene. He testified that he received the call around 6:00 A.M. and arrived three or four minutes later. Officer Smith obtained a description of the two suspects from the manager and broadcast the description to other officers in the area. The Shoney's manager then led Officer Smith around the restaurant, describing what had happened. Officer Smith noticed that the manager had a small laceration on the top of his head and that the drawer from the cash

register was lying on the floor in the front of the restaurant, along with the register's contents and a black garbage bag.

Also responding to the call and testifying at trial were Officers Patrick Ragan and Paul Sorace, Sergeant Vernon Teague, Detectives Diana McCoy and William Stokes, and Tim Matthews, a crime scene investigator. According to these officers, the accomplice was apprehended in a field near the Bellevue Mall, and the Defendant when he emerged from a crawl space beneath a nearby house. While searching for the suspects, police found a white vehicle belonging to the Defendant parked across the street from Shoney's. Inside the vehicle, police found the Defendant's wallet and a "large black plastic garbage bag" full of loose bills and coins. Police also recovered a loaded .357 magnum revolver, a black pair of pants, a black sweatshirt, and a black hoodie. Lorita Marsh, an expert in latent fingerprint examination, testified that she matched the accomplice's and the Defendant's fingerprints to a number of prints collected from the Defendant's vehicle.

At the police station, the Defendant gave a statement to Detective Stokes and Detective McCoy.[3] An audio recording of this statement was played at trial and a transcription provided to the jury. In the statement, the Defendant claimed that his accomplice approached him a few days before the robbery and convinced him to participate. The Defendant told him "yeah, I will go ahead and be involved in on it, but . . . hopefully whatever plan you got[,] I won't be caught." The Defendant explained that on the morning of May 18, 2009, he and his accomplice took the Defendant's vehicle to a parking lot near the Shoney's restaurant. After parking the vehicle, they walked to the back of the restaurant and then waited, trying to decide what to do. The Defendant told his accomplice "whatever you do that's what I'm gonna do." When the back door of the restaurant opened, they rushed in. The Defendant was armed with a .357 magnum revolver, and his accomplice was carrying a BB gun. The Defendant said that he was the one who "made the guy put . . . the money in the bag." His accomplice "secured" the other employees:

> [H]e started pulling them towards him. And he was, he's like put all the women, like I guess it's a, it's like cooler or- or some area in the back of the store, he secured all of them and pushed them over into the area while I went up front.

After the Defendant got the money, they ran out of the restaurant. The Defendant threw his gun in some bushes before hiding in a crawl space under a house, where the police eventually found him.

---

[3] The trial court denied the Defendant's pretrial motion to suppress the statements he made while in police custody. While the Defendant raised this issue in his application for permission to appeal, he did not raise the issue in his subsequent brief or at oral argument. Therefore, we consider this issue withdrawn by the Defendant. In any event, we conclude that the Court of Criminal Appeals adequately addressed the issue.

At the conclusion of the State's proof, the Defendant moved to dismiss three of the four especially aggravated kidnapping charges, asserting, among other claims, that these charges, in conjunction with the aggravated robbery charge, violated principles of due process articulated in *State v. Anthony*, 817 S.W.2d 299 (Tenn. 1991), and subsequent case law.[4] The trial court denied the Defendant's motion.

The defense called six witnesses, including several family members and friends of the Defendant.[5] These witnesses testified as to the Defendant's emotional problems in the time leading up to the robbery. Dr. Murray Smith, an internist, also testified as to the Defendant's mental condition at the time of the robbery.[6]

The jury convicted the Defendant as charged of one count of aggravated robbery and four counts of especially aggravated kidnapping. Afterward, the Defendant moved to dismiss the especially aggravated kidnapping convictions, arguing that these convictions, accompanied by the aggravated robbery conviction, violated principles of due process under *Anthony*, 817 S.W.2d at 299. The trial court denied the Defendant's motion.

On appeal, the Defendant argued that the trial court committed reversible error by not giving the jury instruction required by this Court's decision in *White*, 362 S.W.3d at 559.[7] The Court of Criminal Appeals affirmed the Defendant's convictions, finding that a *White* jury instruction was not required because the kidnapping and robbery charges did not involve the same victim. *State v. Teats*, No. M2012-01232-CCA-R3-CD, 2014 WL 98650, at *20-21 (Tenn. Crim. App. Jan. 10, 2014). The court reasoned that *White*

---

[4] The Defendant also asserted that there was insufficient proof that he was criminally responsible for the conduct of the accomplice and that separate convictions for aggravated robbery and especially aggravated kidnapping would violate protections against double jeopardy.

[5] Among these witnesses were James Teats, Sr., the Defendant's father; Juanita Carney, the Defendant's sister; Malia Bodruzzaman, the Defendant's fiancée; and James Teats, Jr. and Jeffrey Alan Teats, the Defendant's brothers.

[6] Dr. Smith testified that the Defendant was suffering from Graves' disease, or thyroid toxicosis, at the time of the robbery, and opined that this may have affected his ability to understand the situation. In rebuttal, the State called Staci Turner, an adult psychiatric nurse practitioner, and Dr. Kimberly Brown, a forensic psychologist. Ms. Turner performed a psychiatric intake of the Defendant on June 15, 2009, and testified that he did not appear to be experiencing any hallucinations or showing any signs of psychosis at that time. Dr. Brown opined that the Defendant was not suffering from a mental problem on May 18, 2009, that would have caused him not to know what he was doing or appreciate the wrongfulness of his actions.

[7] The trial court denied the Defendant's requested special jury instruction, which was similar to the instruction we later articulated in *White*. The jury rendered its verdict on November 3, 2011, and we issued our decision in *White* on March 9, 2012. The *White* jury instruction requirement applies to cases in the appellate pipeline on the date *White* was issued. *State v. Cecil*, 409 S.W.3d 599, 608 (Tenn. 2013).

overruled this Court's earlier decision in *Anthony*, 817 S.W.2d at 299, thereby rejecting *Anthony*'s "expansive application of due process." *Teats*, 2014 WL 98650, at \*21. The court noted that, unlike the defendant in *Anthony*, the Defendant was not convicted of the robbery and kidnapping of the same victim. *Id.* at 20. The Court of Criminal Appeals also reasoned that the jury instruction we articulated in *White* specifically used the words "the victim," as opposed to "the victim of the underlying felony," suggesting that the *White* jury instruction is only applicable to kidnapping and accompanying crimes committed against the same victim. *Id.*

We granted review in this case to determine whether a *White* jury instruction must be given when a defendant is charged with the kidnapping and robbery of separate victims.[8]

## II.    Analysis

### A.

We first review the development of the law giving rise to the jury instruction required by *White*, 362 S.W.3d at 578. In 1991, in *Anthony*, this Court recognized that a period of confinement, technically meeting the definition of kidnapping, often accompanies crimes such as robbery, rape, and assault. 817 S.W.2d at 305. Kidnapping, which is defined in terms of false imprisonment, is the unlawful removal or confinement of another so as to interfere substantially with the other's liberty.[9] Tenn. Code Ann.

---

[8] The issue presented in this case is substantially the same as the issue presented in another case before this Court, *State v. Ricco R. Williams*, No. W2013-02365-CCA-RM-CD, 2014 WL 60967 (Tenn. Crim. App. Jan. 7, 2014). The two cases were docketed together and heard on February 5, 2015. *See State v. Williams*, __ S.W.3d __, No. W2013-01897-SC-R11-CD (Tenn. 2015).

[9] Kidnapping is proscribed at three levels under our statutory scheme, with each level based upon the definition of false imprisonment. Kidnapping, a Class C felony, is a false imprisonment "[u]nder circumstances exposing the other person to substantial risk of bodily injury." Tenn. Code Ann. § 39-13-303 (2008). Aggravated kidnapping, a Class B felony, is a false imprisonment committed:

> (1) To facilitate the commission of any felony or flight thereafter;
> (2) To interfere with the performance of any governmental or political function;
> (3) With the intent to inflict serious bodily injury on or to terrorize the victim or another;
> (4) Where the victim suffers bodily injury; or
> (5) While the defendant is in possession of a deadly weapon or threatens the use of a deadly weapon.

Tenn. Code Ann. § 39-13-304(a)-(b)(1) (1990). Especially aggravated kidnapping, a Class A felony, is a false imprisonment:

> (1) Accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon;

§ 39-13-302(a) (1990). As this Court noted in *Anthony*, "the offense of kidnapping defined in these statutes at times could literally overrun several other crimes." *Anthony*, 817 S.W.2d at 303 (quoting *People v. Levy*, 204 N.E.2d 842, 844 (N.Y. 1965)). The Court identified robbery, rape, and assault as potential offenses that, when accompanied by a kidnapping charge, could give rise to due process concerns. *Id.* (quoting *Levy*, 204 N.E.2d at 844) ("It is a common occurrence in robbery, for example, that the victim be confined briefly at gunpoint or bound and detained, or moved into and left in another room or place."). Based on these concerns, the Court concluded that a separate kidnapping conviction could not be supported when "the confinement, movement, or detention [was] essentially incidental to the accompanying felony." *Id.* at 306, 307 (emphasizing that "[t]he test is not whether the detention was an 'integral part or essential element' of the [accompanying offense], but whether it was 'essentially incidental' to that offense").

Later, in *State v. Dixon*, this Court modified the "essentially incidental" analysis by clarifying that "any restraint in addition to that which is necessary to consummate rape or robbery may support a separate conviction for kidnapping." 957 S.W.2d 532, 535 (Tenn. 1997). Under *Dixon*, the inquiry became (1) whether the movement or confinement of the victim was beyond that necessary to consummate the accompanying crime; and (2) whether the additional movement or confinement prevented the victim from summoning help, lessened the defendant's risk of detection, or created a significant danger or increased the victim's risk of harm.[10] *Id.*; *see also State v. Richardson*, 251 S.W.3d 438, 442-43 (Tenn. 2008) (recognizing that the *Dixon* test replaced the *Anthony* "essentially incidental" analysis). Under this framework, the jury's role was limited to determining whether the State had proven the elements of kidnapping and the accompanying felony beyond a reasonable doubt. *State v. Cozart*, 54 S.W.3d 242, 247 (Tenn. 2001). The "essentially incidental" analysis was not considered as one of these elements but was a question to be determined exclusively by the trial court and reviewed de novo on appeal. *Id.* ("The determination of whether due process has been violated is purely a question of law.").

<hr>

(2) Where the victim was under the age of thirteen (13) at the time of the removal or confinement;

(3) Committed to hold the victim for ransom or reward, or as a shield or hostage; or

(4) Where the victim suffers serious bodily injury.

Tenn. Code Ann. § 39-13-305(a)-(b)(1) (1990).

[10] The distance of the victim's movement and the duration and place of the victim's confinement were factors to be considered when determining if the movement or confinement was beyond that necessary to consummate the accompanying crime, and the second prong of the analysis was to be addressed only if the threshold inquiry in the first prong was satisfied. *Dixon*, 957 S.W.2d at 535.

In 2012, in *White*, we determined that the *Anthony*/*Dixon* framework had proven unworkable and expressly overruled *Anthony* and the entire line of cases that included a separate due process analysis on appellate review. *White*, 362 S.W.3d at 578. We held that the question of whether a kidnapping was "essentially incidental" to an accompanying offense is a question of fact for a properly instructed jury. *Id.* at 577. This finding by a jury, along with a reviewing court's "assess[ment] [of] the sufficiency of the convicting evidence," is sufficient to protect the defendant's due process rights. *Id.* at 577-78. We identified the proper inquiry for the jury as "whether the removal or confinement is, in essence, incidental to the accompanying felony or, in the alternative, is significant enough, standing alone, to support a conviction." *Id.* at 578. To facilitate this determination, we provided a jury instruction,[11] which was subsequently adopted by the Tennessee Pattern Jury Instruction Committee. *See* 7 Tenn. Prac. Pattern Jury Instr. T.P.I.-Crim. 8.01-.03, 8.05. This instruction did not create a new standard for kidnapping, but "merely provid[ed a] definition for the element of the offense requiring that the removal or confinement constitute a substantial interference with the victim's liberty." *Cecil*, 409 S.W.3d at 607 (quoting *White*, 362 S.W.3d at 578) (internal quotation mark omitted). Later, in *Cecil*, we held that the absence of this instruction, when warranted, results in instructional error that must be subjected to constitutional harmless error review. 409 S.W.3d at 610.

We have also identified certain crimes—such as robbery, rape, and assault—that, when charged along with kidnapping, would warrant this instruction. *See State v. Alston*,

---

[11] In *White*, we set forth the following instruction:

To establish whether the defendant's removal or confinement of the victim constituted a substantial interference with his or her liberty, the State must prove that the removal or confinement was to a greater degree than that necessary to commit the offense of [insert offense], which is the other offense charged in this case. In making this determination, you may consider all the relevant facts and circumstances of the case, including, but not limited to, the following factors:

• the nature and duration of the victim's removal or confinement by the defendant;
• whether the removal or confinement occurred during the commission of the separate offense;
• whether the interference with the victim's liberty was inherent in the nature of the separate offense;
• whether the removal or confinement prevented the victim from summoning assistance, although the defendant need not have succeeded in preventing the victim from doing so;
• whether the removal or confinement reduced the defendant's risk of detection, although the defendant need not have succeeded in this objective; and
• whether the removal or confinement created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense.

*White*, 362 S.W.3d at 580-81 (footnote omitted).

No. E2012-00431-SC-R11-CD, 2015 WL 2155690, at *4 (Tenn. May 5, 2015) (quoting *Anthony*, 817 S.W.2d at 303). Recently, in *Alston*, we determined that a *White* jury instruction is not required when a defendant is charged with the offenses of kidnapping and aggravated burglary. *Alston*, 2015 WL 2155690, at *6. However, this is our first opportunity to consider whether the *White* jury instruction is required when a kidnapping charge and an accompanying robbery charge involve different victims.

**B.**

The State argues that a *White* jury instruction is unnecessary when the victim of a kidnapping is different than the victim of another underlying offense, asserting that a kidnapping perpetrated against one person can never be "essentially incidental" to an offense perpetrated against a separate person. Conversely, the Defendant contends that a *White* jury instruction must be given even though the State names different victims for the kidnapping and robbery charges, as the due process concerns that existed in *Anthony* may still be implicated where a defendant is charged with kidnapping and an accompanying crime that inherently involves confinement of a victim. This involves a question of law which we review de novo with no presumption of correctness. *See State v. Clark*, 452 S.W.3d 268, 295 (Tenn. 2014) (citing *State v. Hawkins*, 406 S.W.3d 121, 128 (Tenn. 2013)).

This is an area of law that needs some clarity. A number of panels of the Court of Criminal Appeals have reached different conclusions on this issue. Some panels have held that a *White* jury instruction is not required when the charges of kidnapping and an accompanying offense do not involve the same victim. *See, e.g.*, *State v. Holman*, No. E2012-01143-CCA-R3-CD, 2014 WL 295610, at *12 (Tenn. Crim. App. Jan. 27, 2014); *Williams*, 2014 WL 60967, at *11; *State v. Mathis*, No. M2011-01096-CCA-R3-CD, 2013 WL 4774130, at *9 (Tenn. Crim. App. Sept. 5, 2013); *see also State v. Elliott*, No. M2001-01990-CCA-R3-CD, 2002 WL 31528538, at *4 (Tenn. Crim. App. Nov. 15, 2002) ("[W]hen the robbery victim and the kidnapping victim are two different persons, the issue is better characterized as a question of whether sufficient evidence exists to sustain a conviction for aggravated kidnapping."). Other panels have held that a *White* jury instruction is required when kidnapping and certain accompanying charges involve different victims. *See, e.g.*, *State v. Pryor*, No. E2012-02638-CCA-R3-CD, 2014 WL 1516525, at *9-10 (Tenn. Crim. App. Apr. 17, 2014); *State v. Bowman*, No. E2012-00923-CCA-R3-CD, 2013 WL 4680402, at *15 (Tenn. Crim. App. Aug. 29, 2013) ("Our [S]upreme [C]ourt never said in the *Anthony/Dixon/White* line of cases that the fact that the victim of the kidnapping was different than the named victim of the accompanying felony eliminated the need for due process analysis."); *see also Holman*, 2014 WL 295610, at *13 (Ogle, J., concurring in part and dissenting in part); *Teats*, 2014 WL 98650, at *30-32 (Tipton, P.J., dissenting); *Williams*, 2014 WL 60967, at *12-16 (Witt, J., concurring and dissenting).

We hold that a *White* jury instruction is not required when a defendant is charged with the kidnapping and robbery of different victims. The jury instruction we articulated in *White* was intended to address the due process concerns that arise when a defendant is charged with kidnapping a victim and other crimes, such as robbery, rape, or assault, that involve some inherent confinement of that victim. *Cf. State v. Salamon*, 949 A.2d 1092, 1117 (Conn. 2008) ("Our legislature . . . intended to exclude from the scope of . . . kidnapping . . . those confinements or movements of a victim that are merely incidental to and necessary for the commission of another crime against *that victim*." (emphasis added)). Where a defendant is charged with kidnapping and an accompanying offense involving some confinement of the same victim, there are appropriate due process concerns that the defendant could be convicted of two crimes—e.g. robbery and kidnapping—when he has only committed one crime—robbery. But where, as in this case, the State charged the Defendant with robbing the restaurant manager and kidnapping the four other employees, the Defendant does not stand the risk of being convicted of kidnapping a victim he confined only long enough to rob. Simply put, the due process concerns articulated in *White* are not present, as the kidnapping of one or more victims can never be "essentially incidental" to an offense perpetrated against a different victim or victims. *See White*, 362 S.W.3d at 580.

There is nothing fundamentally unfair about punishing the Defendant for kidnapping four victims and robbing another and no risk that the charged crime of robbery of the restaurant manager "could literally overrun" the crimes of kidnapping the four employees, whose confinement was not inherent in the robbery of the manager. *See Anthony*, 817 S.W.2d at 303 (quoting *Levy*, 204 N.E.2d at 844). While the Defendant may have decided to confine the four employees to facilitate the robbery of the manager, as it would be easier to commit the robbery by doing so, this decision is not deserving of due process protection. There is no purpose in utilizing a due process analysis to allow a defendant to commit a crime for his convenience or for the effectiveness of completing another crime. Had the State charged the Defendant with robbery and kidnapping of the manager, then the *White* jury instruction would have been required, but the Defendant was not charged with kidnapping the manager and should not have the opportunity to escape a conviction for confining the four other employees because he also robbed the manager. The reason for the *White* jury instruction does not exist for those situations.

Our shift in *White* from a question of law to a question of fact on the issue of whether a kidnapping is incidental to another offense was significant. The *Anthony* rule had proven unworkable, and it was our intent to simplify the process, not to further complicate it. *See, e.g.*, *Alston*, 2015 WL 2155690, at *6 (declining to extend the *White* jury instruction requirement to cases involving especially aggravated kidnapping and aggravated burglary). In *White*, though we acknowledged and, to an extent, retained the due process protections that should be afforded to defendants who are charged with kidnapping and certain accompanying offenses, we overruled *Anthony* in all other respects. *White*, 362 S.W.3d at 578. The determination of whether a *White* jury

instruction is required involves different considerations than were involved in the *Anthony*/*Dixon* framework, and thus, the *White* jury instruction requirement is more limited in scope than the former *Anthony* rule.[12]   *White*, 362 S.W.3d at 578.

While the majority of jurisdictions do not allow separate convictions for kidnapping and an accompanying felony where the kidnapping was merely incidental to that felony,[13] only a few of these jurisdictions utilize a jury instruction to determine this question.  *See, e.g.*, *People v. Delacerda*, 186 Cal. Rptr. 3d 475, 484 (Cal. Ct. App. 2015); *Salamon*, 949 A.2d at 1117; *cf. Hines v. State*, 75 S.W.3d 444, 448 (Tex. Crim. App. 2002) ("It is up to the jury to distinguish between those situations in which a substantial interference with the victim's liberty has taken place and those situations in which a slight interference has taken place.").  However, of the states utilizing only a jury instruction, none have clearly extended their instructional requirement to cases involving kidnapping and robbery of separate victims.[14]

As we recently noted in *Alston*, the *White* jury instruction is not required when a defendant is charged with kidnapping and an accompanying felony that does not

---

[12] The Defendant asserts that, in deciding whether the *White* jury instruction is required, courts should focus on more than just the victims named in the kidnapping versus the accompanying robbery charges.  For example, courts could take into account the temporal and spatial relationship of the kidnapping in comparison to the robbery.  However, the Defendant has not articulated a clear, workable rule that could be applied in such situations, and we decline to complicate the question in such a way.

[13] *See, e.g.*, *Patzka v. State,* 348 So. 2d 520, 523-24 (Ala. Crim. App. 1977); *Alam v. State,* 776 P.2d 345, 349 (Alaska Ct. App. 1989); *Summerlin v. State,* 756 S.W.2d 908, 910 (Ark. 1988); *People v. Robertson*, 146 Cal. Rptr. 3d 66, 78 (Cal. Ct. App. 2012); *Salamon*, 949 A.2d at 1117; *People v. Bridges*, 612 P.2d 1110, 1117 (Colo. 1980); *Weber v. State*, 547 A.2d 948, 959 (Del. 1988); *Faison v. State*, 426 So. 2d 963, 966 (Fla. 1983*)*; *State v. Correa*, 706 P.2d 1321, 1325 (Haw. Ct. App. 1985); *People v. Cole*, 665 N.E.2d 1275, 1284 (Ill. App. Ct. 1996); *State v. Rich*, 305 N.W.2d 739, 745 (Iowa 1981); *State v. Buggs*, 547 P.2d 720, 731-32 (Kan. 1976); *Spencer v. Commonwealth*, 554 S.W.2d 355, 358 (Ky. 1977); *State v. Estes*, 418 A.2d 1108, 1113 (Me. 1980); *State v. Stouffer*, 721 A.2d 207, 215-16 (Md. 1998); *People v. Adams*, 205 N.W.2d 415, 422 (Mich. 1973); *State v. Smith*, 669 N.W.2d 19, 32 (Minn. 2003); *Cuevas v. State,* 338 So. 2d 1236, 1238 (Miss. 1976); *State v. Shelton*, 78 S.W.3d 200, 204-05 (Mo. Ct. App. 2002); *Mendoza v. State*, 130 P.3d 176, 181 (Nev. 2006); *State v. Masino*, 466 A.2d 955, 960 (N.J. 1983); *Levy,* 204 N.E.2d at 844-45; *State v. Fulcher*, 243 S.E.2d 338, 349 (N.C. 1978); *State v. Lynch*, 787 N.E.2d 1185, 1210 (Ohio 2003); *State v. Garcia*, 605 P.2d 671, 676-77 (Or. 1980); *Commonwealth v. Hughes*, 399 A.2d 694, 698 (Pa. Super. Ct. 1979); *State v. Innis*, 433 A.2d 646, 655 (R.I. 1981); *State v. St. Cloud*, 465 N.W.2d 177, 181 (S.D. 1991); *State v. Goodhue,* 833 A.2d 861, 867 (Vt. 2003); *Brown v. Commonwealth*, 337 S.E.2d 711, 713 (Va. 1985); *State v. Miller*, 336 S.E.2d 910, 916 (W. Va. 1985).

[14] While Delaware requires a specific jury instruction "in every case when a defendant is charged with kidnapping in conjunction with an underlying crime," before that instruction can be given, "the trial judge must [first] determine [as a matter of law] if the facts presented in the State's case warrant the submission of that issue to the jury at all."  *Weber*, 547 A.2d at 959.  This two-step analytical framework resembles our former *Anthony*/*Dixon* analysis in addition to the *White* jury instruction.

inherently involve the confinement of a victim. *Alston*, 2015 WL 2155690, at *6 (holding that a *White* jury instruction is not warranted where aggravated burglary is the accompanying offense because aggravated burglary is not the type of offense that inherently involves the confinement of a victim). Similarly, when a defendant robs one victim, there is no inherent necessity to confine a separate victim. As such, the due process concerns that are implicated when a defendant is charged with kidnapping and robbing the same victim are not implicated when a defendant is charged with kidnapping one victim while robbing another.[15]

## Conclusion

We hold that a *White* jury instruction is not required when a defendant is charged with kidnapping and robbery of separate victims. Accordingly, the trial court did not err in declining to give a jury instruction based on our decision in *White*, 362 S.W.3d at 559. The Defendant's convictions are affirmed. It appearing from the record that the Defendant is indigent, the costs of this appeal are assessed to the State of Tennessee.


_____
SHARON G. LEE, CHIEF JUSTICE

---

[15] We acknowledge that the penalties for kidnapping are often higher than the penalties for robbery and that the State has wide discretion in choosing which charges to pursue. However, "[i]t is the task of the [L]egislature, . . . not this Court, to define what shall constitute a criminal offense and to assess punishment for a particular crime." *White*, 362 S.W.3d at 567 (quoting *State v. Farner*, 66 S.W.3d 188, 200 (Tenn. 2001)) (internal quotation marks omitted).