IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 21, 2018

**JEROME MAURICE TEATS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2009-D-2955    Steve R. Dozier, Judge**

_____

**No. M2017-00855-CCA-R3-PC**

_____

The Petitioner, Jerome Maurice Teats, filed for post-conviction relief from his conviction of one count of aggravated robbery and four convictions of especially aggravated kidnapping.  The Petitioner alleged that based upon the advice of trial counsel, he rejected plea offers and decided to go to trial.  The Petitioner further alleged that appellate counsel was ineffective by failing to include a suppression issue in the application for permission to appeal to the supreme court.  The post-conviction court found that the Petitioner failed to prove that either trial counsel or appellate counsel were ineffective.  On appeal, the Petitioner challenges this ruling.  Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and CAMILLE R. MCMULLEN, JJ., joined.

Elaine Heard, Nashville, Tennessee, for the Appellant, Jerome Maurice Teats.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Glenn R. Funk, District Attorney General; and J. Wesley King, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

In October 2009, the Petitioner and his co-defendant, Tirrone Akillia Simpkins, were indicted on one count of aggravated robbery and four counts of especially aggravated kidnapping.  State v. Jerome Maurice Teats, No. M2012-01232-CCA-R3-CD,

2014 WL 98650, at \*1 (Tenn. Crim. App. at Nashville, Jan. 10, 2014), aff'd, 468 S.W.3d 495 (Tenn. 2015). On direct appeal, our supreme court summarized the factual and procedural trial history as follows:

> Shortly before six o'clock on the morning of May 18, 2009, [the Petitioner] and Tirrone Akillia Simpkins ("the accomplice") forced their way into the back door of a Shoney's restaurant in Nashville. Armed with guns, they threatened four employees in the kitchen area, forced them to gather in a storage area in the back of the kitchen, and told them to put their heads down and not to move. As the accomplice guarded these employees, the [Petitioner] forced the Shoney's manager to take him to the restaurant's money drawer. After taking the money, the intruders fled on foot but were soon apprehended by police. A grand jury indicted the [Petitioner] for aggravated robbery of the Shoney's manager and four counts of especially aggravated kidnapping of the four Shoney's employees.

State v. Teats, 468 S.W.3d 495, 496 (Tenn. 2015).

At trial, the proof revealed that shortly after the offense, the police found the Petitioner hiding in a crawl space under a nearby house. Id. at 498. He was arrested and taken to the police station where he gave a statement, claiming that Simpkins approached him a few days before the robbery and convinced him to participate in the crime. Id. at 498-99. The Petitioner said that on the morning of the robbery, he and Simpkins drove to a parking lot near the restaurant and parked. Id. at 499. The Petitioner told Simpkins that he would do whatever Simpkins did. Id. They rushed into the restaurant when the back door opened. Id. The Petitioner had a .357 magnum revolver, and Simpkins had a BB gun. Id. The Petitioner made the store owner put the money in the bag while Simpkins secured the employees. Id. Afterward, they ran out of the restaurant, the Petitioner threw his gun in some bushes, and he hid in a crawl space under a house until he was found by the police. Id. The defense presented testimony from several of the Petitioner's family members and friends about the Petitioner's emotional problems leading up to the robbery. Id. The defense also presented the testimony of an expert witness, Dr. Murray Smith, about the Petitioner's mental condition at the time of the robbery. Id. Dr. Smith diagnosed the Petitioner with Grave's disease, explaining that his body over-produced the thyroid hormone thyroxine. Jerome Maurice Teats, No. M2012-01232-CCA-R3-CD, 2014 WL 98650, at \*7. Dr. Smith stated that the Petitioner was physically and mentally ill due to thyroxine, which rendered the Petitioner unable to understand the situation, make good choices, or appreciate the consequences of his behavior. Id.

At the conclusion of the proof, the jury convicted the Petitioner of one count of aggravated robbery and four counts of especially aggravated kidnapping. Teats, 468 S.W.3d at 499-500. The trial court sentenced the Petitioner as a Range II, multiple offender to seventeen years for the aggravated robbery conviction and to thirty-three years for each especially aggravated kidnapping conviction. Jerome Maurice Teats, No. M2012-01232-CCA-R3-CD, 2014 WL 98650, at *9. The trial court ordered the especially aggravated kidnapping sentences to be served concurrently with each other but consecutively to the aggravated robbery sentence for a total effective sentence of fifty years. Id.

The Petitioner appealed his convictions, arguing:

(1) the trial court erred in denying his motion to suppress; (2) the trial court erred in denying his motion to disqualify the district attorney general's office; (3) his convictions for especially aggravated kidnapping must be reversed on due process and double jeopardy grounds [because the trial court failed to give an instruction pursuant to State v. White, 362 S.W.3d 559, 578 (Tenn. 2012)]; (4) the trial court improperly instructed the jury on criminal responsibility; (5) the evidence was not sufficient to support his convictions; (6) cumulative error; and (7) his sentence is excessive.

Jerome Maurice Teats, No. M2012-01232-CCA-R3-CD, 2014 WL 98650, at *1. This court affirmed the Petitioner's convictions and sentences. Id. Our supreme court granted permission to appeal in order "to determine whether a White jury instruction must be given when a defendant is charged with the kidnapping and robbery of separate victims." Teats, 468 S.W.3d at 500. Our supreme court held that a White instruction was not required in such a situation and affirmed the Petitioner's convictions. Id.

Thereafter, the Petitioner, acting pro se, filed a timely petition for post-conviction relief. Counsel was appointed and amended petitions were filed. In the petitions, the Petitioner alleged numerous claims of ineffective assistance of counsel, including (1) that his first counsel, who represented him at the preliminary hearing and the arraignment, gave him erroneous advice about a plea offer that resulted in the Petitioner rejecting the offer and proceeding to trial; (2) that both trial counsel and co-counsel failed to convey plea offers to the Petitioner; and (3) that co-counsel was ineffective by failing to ensure that the appellate record contained all necessary materials for appellate review of the trial court's denial of his motion to suppress.

At the post-conviction hearing,[1] the Petitioner testified that his trial occurred in 2011 and that he was represented by trial counsel and co-counsel. Trial counsel began representing the Petitioner in 2010. Approximately three months prior to trial, the Petitioner retained co-counsel, who he thought had "a better rapport" with the State than trial counsel and could obtain more favorable plea offers. Additionally, the Petitioner thought co-counsel had appellate experience and could ensure that issues were preserved for appeal.

The Petitioner thought trial counsel was going to pursue a theory of diminished capacity, which would help get his statement suppressed. However, the trial court denied his suppression motion.

The Petitioner recalled that in 2009, after he was indicted by the grand jury, he received a plea offer that included a sentence of fifteen years with 100 percent of the sentence to be served in confinement. The Petitioner first heard the offer while he was represented by his first counsel. The Petitioner had "no intention[]" of accepting the offer. The Petitioner's family was not satisfied with the representation of first counsel and retained trial counsel. On one occasion, trial counsel advised the Petitioner of the same fifteen-year offer the Petitioner had received from his first counsel. The Petitioner rejected the plea offer based upon trial counsel's advice that the defense would be successful in getting his statement suppressed and the especially aggravated kidnapping charges dismissed, either at trial or on appeal.

The Petitioner said that approximately two or three weeks before trial, he told trial counsel and co-counsel to solicit other plea offers from the State. He told them that if they could obtain an offer that was "a little bit" more favorable, he would "[m]ore than likely" accept it. Both counsel "promised" to obtain a more favorable plea offer, but they never advised the Petitioner of any such offer. The Petitioner said that during a meeting before "some last minute pretrial motions were filed," co-counsel mentioned that multiple offers were on the table, but the Petitioner was never advised of those offers.

The Petitioner said that he hired co-counsel to handle his direct appeal but that he was not satisfied with the appeal. From his reading of this court's opinion, the Petitioner discerned that co-counsel "dropped the ball" and failed to file all of the necessary transcripts and paperwork regarding the suppression issue.[2] The Petitioner thought many of the "implications" made by this court on direct appeal regarding the suppression issue were contrary to the trial court's rulings. In the Petitioner's opinion, co-counsel "messed up" and damaged his Rule 11 application by failing to include the suppression issue. The Petitioner denied that he and co-counsel discussed raising only one issue on appeal to the

---

[1]We have chosen to limit our recitation of the facts to those pertinent to the Petitioner's issues.
[2]We can find no such reference in this court's opinion.

supreme court; instead, the Petitioner said that he asked co-counsel to raise the suppression issue in addition to the White instruction issue. The Petitioner thought this court had ruled incorrectly regarding the suppression issue and that if co-counsel had pursued the suppression issue, he "would have gotten some relief on this because Judge Tipton was already in my favor."[3]

On cross-examination, the Petitioner conceded that he was on parole for drug possession at the time of the offenses for which he was on trial. The Petitioner's prior felony convictions were the result of guilty pleas. Therefore, the Petitioner had no previous trial experience.

The Petitioner met with trial counsel while he was incarcerated and continued to meet with trial counsel after he was released on bail in October 2010. The trial occurred in November 2011. The Petitioner recalled that initially, he was charged with only one count of aggravated robbery. First counsel, who was representing the Petitioner at the time, advised him of a plea offer that included a sentence of twelve years with potential release eligibility after serving 35 percent of his sentence. The Petitioner was afraid and "kind of" wanted to accept the offer. However, first counsel would not let him accept the plea offer because the Petitioner was "bad off," was on medication, and was awaiting the results of a competency evaluation. After the Petitioner was found competent to stand trial, the State indicted the Petitioner on four counts of especially aggravated kidnapping. At that point, first counsel advised the Petitioner that the first plea offer had been revoked and that a second offer had been made, namely fifteen years at 100 percent.

Trial counsel testified that he had practiced law for twenty-five years. He spent thirteen years as a prosecutor and twelve years as a defense attorney. The Petitioner's case was pending when he was retained by the Petitioner and his girlfriend. Trial counsel was not aware of any offers conveyed by first counsel. Trial counsel had multiple meetings with the Petitioner during the time he represented the Petitioner. Some of the meetings occurred when the Petitioner was incarcerated and some were after he was released on bond. The Petitioner's girlfriend "was a constant presence" at the meetings. They discussed trial strategy, the evidence against the Petitioner, and the "pros and cons" of proceeding to trial or accepting a plea offer. Trial counsel said that the Petitioner was intelligent and opinionated and that they did not always agree on strategy.

---

[3]We note that in this court's opinion on direct appeal, Judge Joseph M. Tipton stated in his dissent that he "believe[d] the trial court's ruling regarding the admissibility of the [Petitioner's] statements [was] insufficient for us to conduct a proper review of the suppression issue." Jerome Maurice Teats, No. M2012-01232-CCA-R3-CD, 2014 WL 98650, at *30 (Tipton, J., dissenting). Judge Tipton observed that "[t]he inferences made by [his] collegues may be correct, but there may be findings the trial court made that do not readily support its ultimate holding." Id. at *31.

Trial counsel was sure the State made plea offers during his representation, but he could not recall the nature of the offers. Trial counsel recalled that "early on," the State made a plea offer that included release eligibility after serving 30 percent, but the Petitioner refused the offer. Thereafter, the grand jury indicted the Petitioner on four counts of especially aggravated kidnapping, which statutorily mandated 100 percent service of the sentence in confinement,[4] which was "not acceptable" to the Petitioner. Trial counsel said that he would have informed the Petitioner of the State's offers although the Petitioner was never inclined to accept the State's offers.

Trial counsel said that the defense strategy was to weaken the State's case by suppressing the Petitioner's statements and establishing the Petitioner's diminished capacity. Regarding the suppression issue, trial counsel recalled that after the Petitioner was arrested, an officer told the Petitioner "you are going to tell this detective everything he wants." Trial counsel thought the officer's statement was a good basis for suppression at trial or on appeal, but he never guaranteed that the Petitioner would be successful on the suppression issue. Moreover, neither trial counsel nor co-counsel promised to obtain a better plea offer from the State. Trial counsel explained that due to the strength of the State's case, he felt that no better offer would be forthcoming.

Trial counsel said that at the time of the Petitioner's trial, he told the Petitioner and his girlfriend that the State was "trying to wrap a kidnapping around an armed robbery and that's going to be the crux of the case." Trial counsel advised them that the Petitioner's case was "not really a factual case, it's a legal argument case."

On cross-examination, trial counsel said that he did not recall how many times he met with the Petitioner and his girlfriend, but he recalled "they were high maintenance." Trial counsel was surprised when the Petitioner hired co-counsel near the time of trial, but he knew co-counsel and appreciated the help.

Trial counsel did not know whether the Petitioner's decision to reject a plea offer was influenced by his counsel's advising the Petitioner that the denial of the suppression motion was a good issue for appeal. Trial counsel acknowledged that the Petitioner may have said he would accept a plea if the proposed sentence were reduced. Trial counsel thought he must have conveyed that message to the State, but he had no independent recollection of doing so. To trial counsel's knowledge, the Petitioner never considered accepting the fifteen-year offer because he did not want to serve 100 percent of the sentence.

Trial counsel said that he and co-counsel discussed the Petitioner's direct appeal. Co-counsel argued the suppression issue in this court and decided on which issues the

---

[4]See Tenn. Code Ann. § 40-35-501(i)(1), (i)(2)(C).

- 6 -

supreme court would be more likely to grant review. Trial counsel was not disappointed by co-counsel's failure to raise the suppression issue to the supreme court because the supreme court generally granted permission to appeal only when a question had not been addressed previously, and this court had addressed the Petitioner's suppression issue.

Co-counsel testified that he was licensed to practice law in 1982 and that his practice was primarily criminal defense. The Petitioner hired him in late 2011, one or two months prior to trial. Because trial counsel had prepared much of the case, co-counsel did not think a continuance was necessary. Co-counsel met with the Petitioner frequently, sometimes alone and sometimes with trial counsel. Co-counsel and trial counsel did not disagree on trial strategy. Co-counsel said the motion to suppress had been filed before he was retained. Co-counsel, trial counsel, and the Petitioner discussed the case, and co-counsel was comfortable and prepared to go to trial.

Co-counsel and trial counsel discussed the Petitioner's direct appeal. Trial counsel "felt strongly" that they could prevail on the suppression issue whereas co-counsel "was more enthusiastic" that they could obtain relief on the issue of the kidnapping instruction. Co-counsel acknowledged that he handled the direct appeal and that he raised numerous issues in this court. He "made a calculated decision that the best way" to convince the supreme court to grant the Petitioner's Rule 11 application was to focus on "one really good issue," which co-counsel thought was the White instruction. Co-counsel did not think the supreme court would entertain the suppression issue because of the amount of deference "given to the trial court and certainly the Court of [C]riminal [A]ppeals who reviewed the evidence and everything." Co-counsel exchanged letters with the Petitioner regarding why pursuing a single issue to the supreme court was the best strategy. Co-counsel thought the Petitioner agreed with the strategy, noting that the Petitioner did not insist that co-counsel raise the suppression issue or any other issues on appeal to the supreme court.

Co-counsel did not recall having conversations with the prosecutor regarding plea offers and denied promising the Petitioner he would obtain a better offer from the State, noting that he left plea negotiations to trial counsel. Co-counsel recalled having discussions with trial counsel and the Petitioner about whether to accept offers that were made but could not recall any "particulars" regarding the offers. Co-counsel reiterated that the Petitioner would not have accepted any plea offer because he wanted to go to trial.

Co-counsel stated that upon discovering that the transcript of the March 10, 2011 suppression hearing was not included in the appellate record, he supplemented the record with the transcript. Co-counsel had no reservations about the completeness of the appellate record. Co-counsel noted that this court made no mention of an incomplete

record. He noted that Judge Tipton had filed a dissent stating that the trial court's findings of fact were insufficient, thus precluding appellate review.

Co-counsel said he was familiar with appellate practice and had appealed cases to the Tennessee Supreme Court. Co-counsel asserted that a defendant had no appeal as of right to the supreme court and that the supreme court rarely granted an application for permission to appeal. Co-counsel did not want to "dilute the matter" in the application for appeal.

The post-conviction court found that the Petitioner had failed to prove that his trial counsel or his appellate counsel were ineffective. On appeal, the Petitioner challenges this ruling.

## II. Analysis

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [Petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697). The same test is used to determine the effectiveness of trial counsel and appellate counsel. See Carpenter v. State, 126 S.W.3d 879, 886 (Tenn. 2004).

On appeal, the Petitioner contends that trial counsel and co-counsel gave him "incorrect advice" by promising to obtain a better plea offer and to be successful on appeal. The Petitioner relied on their advice, rejected the State's offer, and decided to go to trial. The Petitioner further contends that co-counsel was ineffective by failing to include the suppression issue in the Rule 11 application, arguing that Judge Tipton's dissent in this court's opinion reflects a disagreement in the lower court about how to address the issue, making it ripe for supreme court review.

Initially, we note that the Petitioner did not raise the foregoing issues in his post-conviction petitions. "Generally, with respect to those seeking post-conviction relief, this court will not address post-conviction issues that were not raised in the petition or addressed in the post-conviction court." Rickman v. State, 972 S.W.2d 687, 691 (Tenn. Crim. App. 1997). We acknowledge that the Petitioner briefly mentioned the issues when he testified and that his post-conviction counsel questioned trial counsel and co-counsel regarding the issues; however, post-conviction counsel made no arguments concerning the issues, and the post-conviction court made no specific rulings on the issues. See David E. Breezee v. State, No. W2015-02251-CCA-R3-PC, 2017 WL 1907738, at *6 (Tenn. Crim. App. at Jackson, May 9, 2017), perm. to appeal denied, (Tenn. Sept. 22, 2017). Accordingly, these issues are waived. Elza Evans III v. State, No. M2016-02332-CCA-R3-PC, 2017 WL 3600474, at *13 (Tenn. Crim. App. at Nashville, Aug. 21, 2017), perm. to appeal denied, (Tenn. Oct. 4, 2017)

Regardless, the post-conviction court accredited the testimony of both trial counsel and co-counsel, who stated that they did not promise the Petitioner they would obtain a more favorable plea offer from the State nor did they guarantee success on appeal. Moreover, trial counsel and co-counsel agreed that the Petitioner did not want to plead guilty and instead wanted to go to trial. The record does not preponderate against the

- 9 -

post-conviction court's finding that trial counsel and co-counsel were credible witnesses. See Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006). We conclude that the Petitioner failed to establish that trial counsel and co-counsel were deficient.

Regarding co-counsel's failure to pursue the suppression issue in his Rule 11 application, this court has previously observed:

> "[F]ailure to preserve and/or assert all arguable issues on appeal is not *per se* ineffective assistance of counsel, since the failure to do so may be a part of the counsel's strategy of defense. Counsel is not constitutionally required to argue every issue on appeal, or present issues chosen by his client. The determination of which issues to present on appeal is a matter of counsel's discretion."

State v. Matson, 729 S.W.2d 281, 282 (Tenn. Crim. App. 1986) (quoting State v. Swanson, 680 S.W.2d 487, 491 (Tenn. Crim. App. 1984)). Moreover, "[a]ppellate counsel are not constitutionally required to raise every conceivable issue on appeal." Carpenter, 126 S.W.3d at 887. Generally, "appellate counsel's professional judgment with regard to which issues will best serve the [Petitioner] on appeal should be given considerable deference[, and this court] should not second-guess such decisions, and every effort must be made to eliminate the distorting effects of hindsight." Id.

Our supreme court has set forth the following "non-exhaustive list" of factors which "is useful in determining whether an attorney on direct appeal performed reasonably competently in a case in which counsel has failed to raise an issue":

> 1) Were the omitted issues "significant and obvious"?
> 2) Was there arguably contrary authority on the omitted issues?
> 3) Were the omitted issues clearly stronger than those presented?
> 4) Were the omitted issues objected to at trial?
> 5) Were the trial court's rulings subject to deference on appeal?
> 6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
> 7) What was appellate counsel's level of experience and expertise?
> 8) Did the petitioner and appellate counsel meet and go over possible issues?

9) Is there evidence that counsel reviewed all the facts?
10) Were the omitted issues dealt with in other assignments of error?
11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

Id. at 888. "A petitioner alleging ineffective assistance of appellate counsel must prove both that (1) appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and (2) absent counsel's deficient performance, there was a reasonable probability that the petitioner's appeal would have been successful." Michael Fields v. State, No. E2015-01850-CCA-R3-PC, 2016 WL 5543259, at *8 (Tenn. Crim. App. at Knoxville, Sept. 29, 2016) (citing Smith v. Robbins, 528 U.S. 259, 285-86 (2000)), perm. to appeal denied, (Tenn., Jan. 19, 2017).

Again, we note that the post-conviction court accredited the testimony of co-counsel, who testified that he and the Petitioner discussed the strategy to focus on the White instruction, and the Petitioner appeared to agree with the strategy. Our supreme court granted permission to appeal. This court has stated that, "[w]hen reviewing trial counsel's actions, this court should not use the benefit of hindsight to second-guess trial strategy and criticize counsel's tactics." Irick v. State, 973 S.W.2d 643, 652 (Tenn. Crim. App. 1998). Accordingly, the Petitioner has failed to prove either deficiency or prejudice in this regard.

### III.  Conclusion

The judgment of the post-conviction court is affirmed.

_____
NORMA MCGEE OGLE, JUDGE