IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 12, 2016

## STATE OF TENNESSEE v. MICHAEL FRAZIER

**Appeal from the Criminal Court for Shelby County**
**No. 13-02026     Lee V. Coffee, Judge**

_____

**No. W2015-01537-CCA-R3-CD – Filed September 16, 2016**

_____

The defendant, Michael Frazier, was convicted by a Shelby County Criminal Court jury of especially aggravated kidnapping, a Class A felony; aggravated robbery, a Class B felony; and carrying a weapon with the intent to go armed, a Class A misdemeanor. He was sentenced by the trial court to an effective term of thirty-seven years, eleven months, and twenty-nine days in the Department of Correction. The sole issue he raises on appeal is whether the evidence is sufficient to sustain his especially aggravated kidnapping and aggravated robbery convictions. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Ruchee J. Patel (on appeal) and Paul Guibao (at trial), Memphis, Tennessee, for the appellant, Michael Frazier.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Kenya N. Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

According to the State's proof at trial, on September 23, 2012, the defendant approached the victim, Shatarra Welch, as she was sitting in her car outside a closed car dealership in Memphis, pointed a gun at her face, and demanded her purse and money.

When she told him she had nothing other than a money order, which she was holding at the time, the defendant got into the backseat of her vehicle, took her cell phone and her driver's license, and held his gun on her while she drove to a Walmart to cash the money order. On the defendant's instructions, the victim parked outside the store and left the defendant behind in the vehicle with her car keys as she went into the store to cash the money order. Once inside the store, the victim immediately reported the situation to Walmart employees, who contacted the police. The defendant was quickly arrested and subsequently indicted for especially aggravated kidnapping, aggravated robbery, and being a convicted felon in possession of a firearm.

At trial, the victim testified that early on the afternoon of September 23, 2012, she was at the American Car Center on Winchester Road writing the account number on a money order in preparation for dropping it in the car dealership's drop box when she noticed two men walking down the street past her car. She did not think anything of it until she suddenly saw in her rearview mirror one of the men rapidly approaching her vehicle. The man pointed a silver .38 revolver at her face through her open driver's window and demanded her purse. She told him she had no purse, and he responded by calling her a liar and demanding her money. When she told him all she had was the money order, he got into the backseat of her vehicle behind her, placed his gun at the back of her head, and told her to take him to a "MoneyGram" to cash the money order.

The victim testified that she asked the man what a MoneyGram was, and he responded by telling her not to play with him. She said she assumed he thought that "MoneyGram" was an actual place because the money order had "MoneyGram" stamped on it. She stated that she told him she could take him to Walmart, where she had purchased the money order, and then drove him to the Walmart located seven or eight minutes down the road. The man kept his gun pointed at the back of her head during the entire drive. He took her cell phone and driver's license from her, read her address aloud from her driver's license, and threatened to kill her family if she tried "anything funny." When they reached the Walmart, she tried to park beside a woman who was loading packages into her car, but the defendant directed her to a different parking spot further from the door and told her to leave the keys in the car. When she told him she needed her driver's license to cash the money order, he returned her license to her.

The victim testified that she told the first cashier she saw inside the Walmart what was happening but that individual just looked at her without responding, so she proceeded to the Money Center, where she repeated her story. The Money Center employee notified the store's Loss Prevention Department, and she described her car and what she could recall of the perpetrator's clothing to the loss prevention employee. She said that a police officer who responded to the store informed her that they had captured

the suspect and asked her to follow him to 201 Poplar Avenue, where she was interviewed about the crime and had her cell phone returned to her.

The victim testified that she could not see the perpetrator's face when he was standing outside her driver's door and never tried to look at his face during the drive because he was holding a gun to the back of her head and she did not want to make any sudden movements. She estimated that the ordeal lasted approximately twenty minutes and described herself as terrified during the entire incident.

On cross-examination, the victim reiterated that she did not look at the defendant when he demanded her driver's license and cell phone after he got into the car and she was driving him to Walmart. Instead, she just reached behind her to hand him the items without turning her head.

Daniel Gilmore, a Walmart Loss Prevention Associate who was working at the Winchester store at the time of the incident, testified that he spoke with the victim after a call came in over the radio about a panicked individual at the Money Center. He said the victim was trembling and almost hyperventilating when he arrived and that the first words out of her mouth were that a man had gotten into her car with a gun. After getting a description of her vehicle and the perpetrator's clothing, he went to the front entrance, looked out, and immediately saw her vehicle in the location she had indicated. He then assigned a fellow employee the task of watching the vehicle and reporting any activity while he returned to his office and began reviewing the store's surveillance video.

Mr. Gilmore testified that he "c[aught] up to real time" after reviewing only a few minutes of videotape. He identified a disc he had made of the surveillance tape of the incident, which was admitted as an exhibit and published to the jury. He said that as he was reviewing the videotape immediately after the victim reported the crime, he saw her vehicle pull up to the west side of the parking lot and the victim exit the vehicle and walk into the store. He then saw a second individual, whom he later identified as the defendant, exit the vehicle, walk toward a dumpster, disappear from camera view momentarily, and then enter the store and walk over to the jewelry department, which was in direct view of the Money Center, before exiting the store through the grocery entrance and walking back through the parking lot toward the Ruby Tuesday parking lot.

Mr. Gilmore testified that when the videotape caught up to "real time," he went outside, where he watched the defendant walk over to a dumpster, reach into it, leave the dumpster area, and walk to the front of the Payless Shoe Store. At that point, Memphis police officers arrived and he gave them a description of the defendant, reported his location, and related what the victim had told him about the situation. He next saw the

3

defendant sitting in the backseat of a squad car. On cross-examination, he acknowledged that the surveillance video never showed the defendant with a weapon.

Memphis Police Officer Ryan Reviere, who responded with his partner to the call, testified that Mr. Gilmore informed them that the defendant had gone into the Payless Shoe Store in the next shopping mall. He said he and his partner drove to that parking lot and pulled in behind a second patrol unit, which had also responded. The defendant stepped out of the store, saw the officers, and "took off running northbound across all seven lanes of Winchester." He lost sight of the defendant as they were driving across Winchester but spotted him again running through the brush behind a grocery store. His partner apprehended the defendant at the top of the hill and brought him back to their patrol car, where Officer Reviere searched him and found two cell phones in his pocket, a black one and a Samsung phone with purple trim, which the victim identified as hers.

Officer Christopher Slaughter of the Memphis Police Department's Crime Scene Investigation Unit testified that he found a silver and brown .38 special Rossi handgun revolver inside a dumpster behind the Payless Shoe Store. The weapon was a five-shot revolver, and it was loaded with four rounds of live ammunition.

The defendant elected not to testify and rested his case without presenting any proof. Following deliberations, the jury convicted him of especially aggravated kidnapping and aggravated robbery as charged in counts one and two of the indictment, and of the lesser-included offense of carrying a weapon with the intent to go armed in count three of the indictment.

## ANALYSIS

### Sufficiency of the Evidence

The sole issue the defendant raises on appeal is whether the evidence is sufficient to sustain his especially aggravated kidnapping and aggravated robbery convictions. Specifically, the defendant argues that the State failed to prove beyond a reasonable doubt the essential elements of the crimes. In our review of this issue, we consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

4

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

"A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

## A. Especially Aggravated Kidnapping

To sustain the conviction for especially aggravated kidnapping, the State had to prove beyond a reasonable doubt that the defendant knowingly removed or confined the victim so as to interfere substantially with the victim's liberty and that the removal or confinement was accomplished with a deadly weapon. See Tenn. Code Ann. §§ 39-13-302(a)(1), -305(a)(1).

The defendant, citing State v. White, 362 S.W.3d 559 (Tenn. 2012), argues that the evidence is insufficient to sustain his conviction for especially aggravated kidnapping because the State failed to prove that the confinement of the victim was to a greater degree than necessary to commit the offense of aggravated robbery. He additionally argues that the State failed to prove that the confinement was accomplished with a deadly weapon, asserting that there was no evidence to corroborate the victim's testimony that the defendant held a gun on her. The State argues that the evidence supports the trial court's findings at the motion for new trial hearing that the robbery was completed when the defendant took the money order, cell phone, and driver's license and that the defendant extended the victim's confinement beyond the completed robbery for the

5

purpose of getting the money order cashed. The State also argues that the victim's testimony about the defendant's use of a pistol was sufficient to establish the deadly weapon element of the crime. We agree with the State.

In White, our supreme court overruled "[State v.] Anthony, [817 S.W.2d 299 (Tenn. 1991),] and the entire line of cases including a separate due process analysis in appellate review[,]" concluding that "whether the evidence, beyond a reasonable doubt, establishes each and every element of kidnapping, as defined by statute, is a question for the jury properly instructed under the law." Id. at 577-78. "This finding by a jury, along with a reviewing court's 'asses[ment] [of] the sufficiency of the convicting evidence,' is sufficient to protect the defendant's due process rights." State v. Teats, 468 S.W.3d 495, 502 (Tenn. 2015) (quoting White, 362 S.W.3d at 577-78).

The White court wrote:

Under the standard we adopt today, trial courts have the obligation to provide clear guidance to the jury with regard to the statutory language. Specifically, trial courts must ensure that juries return kidnapping convictions only in those instances in which the victim's removal or confinement exceeds that which is necessary to accomplish the accompanying felony. Instructions should be designed to effectuate the intent of the General Assembly to criminalize only those instances in which the removal or confinement of a victim is independently significant from an accompanying felony, such as rape or robbery. When jurors are called upon to determine whether the State has proven beyond a reasonable doubt the elements of kidnapping, aggravated kidnapping, or especially aggravated kidnapping, trial courts should specifically require a determination of whether the removal or confinement is, in essence, incidental to the accompanying felony or, in the alternative, is significant enough, standing alone, to support a conviction. In our view, an instruction of this nature is necessary in order to assure that juries properly afford constitutional due process protections to those on trial for kidnapping and an accompanying felony.

Id. at 578. Accordingly, the White court set forth the following jury instruction, which has since become part of the pattern jury instructions, and which the trial court used in this case:

To establish whether the defendant's removal or confinement of the victim constituted a substantial interference with his or her liberty, the State must prove that the removal or confinement was to a greater degree than

6

that necessary to commit the offense of [insert offense], which is the other offense charged in this case. In making this determination, you may consider all the relevant facts and circumstances of the case, including, but not limited to, the following factors:

> --the nature and duration of the victim's removal or confinement by the defendant;
>
> --whether the removal or confinement occurred during the commission of the separate offense;
>
> --whether the interference with the victim's liberty was inherent in the nature of the separate offense;
>
> --whether the removal or confinement prevented the victim from summoning assistance, although the defendant need not have succeeded in preventing the victim from doing so;
>
> --whether the removal or confinement reduced the defendant's risk of detection, although the defendant need not have succeeded in this objective; and
>
> --whether the removal or confinement created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense.

Id. at 580-81 (footnote omitted).

After hearing the evidence and being appropriately instructed by the trial court, the jury found the defendant guilty of the especially aggravated kidnapping of the victim. We conclude that the evidence is sufficient to sustain the jury's verdict. Viewed in the light most favorable to the State, the evidence established that the defendant, after demanding the victim's property at gunpoint and taking her cell phone and her driver's license, kept his gun pointed at the victim's head as she drove to the Walmart to comply with his demand that she take him to get the money order cashed. The drive from the car center to the Walmart took at least seven to eight minutes, and the entire episode, according to the victim, lasted approximately twenty minutes. We, therefore, affirm the defendant's conviction for especially aggravated kidnapping.

## A. Aggravated Robbery

To sustain the conviction for aggravated robbery, the State had to prove beyond a reasonable doubt that the defendant committed an intentional or knowing theft of property from the person of the victim by violence or putting the victim in fear, and that it was accomplished with a deadly weapon. Tenn. Code Ann. §§ 39-13-401(a), -402(a).

The defendant contends that the State failed to prove that the victim's property was taken by violence or by putting the victim in fear, that a deadly weapon was used or displayed, or that any robbery was completed. In support, he argues, among other things, that there was no corroborating evidence to support the victim's testimony that the defendant used a gun, that the money order "remained in [the] custody of [the victim]," that no cash or other property "was taken from the body of any person[,]" and that "[a]ll other property was left in the vehicle when [the victim] was allowed to exit and walk into the store." The State contends that the evidence was sufficient to establish each element of the crime of aggravated robbery, arguing that the defendant had constructive, if not actual, possession of the money order at the beginning of the drive when he asked the victim at gunpoint to drive him to a "MoneyGram" to cash the money order. The State also cites the victim's testimony that she was terrified by having a gun held to her head and gave the defendant her cell phone and driver's license and drove him to the Walmart to cash the money order out of fear. We, once again, agree with the State.

Viewed in the light most favorable to the State, the evidence established that the defendant pointed a gun at the terrified victim's face and demanded her purse and cash. When the victim told him all she had was a money order, the defendant got into the backseat of her vehicle and ordered her to take him somewhere to cash the money order. During the drive, the defendant demanded and took at gunpoint from the victim her cell phone and driver's license. This was sufficient proof from which the jury could find all the elements of the crime beyond a reasonable doubt. Accordingly, we affirm the defendant's conviction for aggravated robbery.

## CONCLUSION

Based on our review, we conclude that the evidence is sufficient to sustain the defendant's convictions for especially aggravated kidnapping and aggravated robbery. Accordingly, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE