IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs August 28, 2018

**STATE OF TENNESSEE v. JAMIE LYNN MOORE**

**Appeal from the Criminal Court for Davidson County**
**No. 2015-B-1433    Steve R. Dozier, Judge**

_____

**No. M2017-01877-CCA-R3-CD**

_____

The Defendant-Appellant, Jamie Lynn Moore, was convicted by a Davidson County jury of aggravated kidnapping and violation of an order of protection, see T.C.A. §§ 39-13-304, -113, for which he received an effective sentence of nine years in confinement. The sole issue presented in this appeal is whether the evidence is sufficient to support his conviction for aggravated kidnapping. Specifically, the Defendant claims that the State failed to prove that he substantially interfered with the victim's liberty. After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed; Remanded for Entry of Judgments on Dismissed Counts**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and TIMOTHY L. EASTER, JJ., joined.

Richard C. Strong, Nashville, Tennessee, for the Defendant-Appellant, Jamie Lynn Moore.

Herbert H. Slatery III, Attorney General and Reporter; Alexander C. Vey, Assistant Attorney General; Glenn Funk, District Attorney General; and Jennifer Charles, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

Prior to May 8, 2015, the night of the offense, the Defendant and Jenifer Strang, the victim, had been in a tumultuous, six-year romantic relationship. On the night of the offense, in an effort to reconcile, the couple had gone out to dinner and returned to the victim's apartment. The victim discovered the Defendant using drugs in the bathroom, became upset, and an argument ensued. The argument eventually led to a physical confrontation, during which the Defendant prevented the victim from leaving her

apartment for approximately two hours. When she managed to escape, she borrowed a phone from neighbors and called the police. The Defendant was subsequently indicted for the aforementioned charges, and the following facts as relevant to the issue raised in this appeal were adduced at the October 31 through November 1, 2016 trial.

At trial, the Defendant conceded in his opening statement that he committed domestic assault on the night of the offense. However, he insisted that he was not guilty of aggravated kidnapping and maintained, as he does on appeal, that the State had "overcharged" the case. The Defendant further argued that the only evidence of substantial interference with the victim's liberty or confinement was from the testimony of the victim, and he vehemently contested her version of the facts. As relevant to aggravated kidnapping, the victim testified that upon returning to her apartment after dinner, she and the Defendant argued over the Defendant's drug use in her apartment. The victim recalled that while they were outside on her patio, she was flipped over in her chair, and the Defendant was on top of her with his hand over her face and mouth. The victim bit the Defendant, and the Defendant then bit the victim's nose and punched her in the cheek and eye, at which point the victim passed out. When the victim awoke, she was "standing up against the wall in [the] kitchen" with the Defendant "pressed up against [her]." She recalled trying to get away from the Defendant and "telling him he just need[ed] to back away, stop touching me, get away from me."

The victim then asked the Defendant if she could use the bathroom mirror to look at her injuries. The victim testified there was a bathroom downstairs, but she preferred to use the one upstairs because she "was trying to get far away" and "create distance." As the victim examined her injuries, the Defendant ripped the bathroom vanity off the wall and said, "I'm not going to jail." The victim then recalled pacing back and forth in her bedroom looking for her phone because she "wanted to call the police to come get [the Defendant] out of [her] apartment so [she could] get out." Asked if there was ever an opportunity where she could leave the apartment, the victim said "no[,] [h]e wouldn't let me." Although most of the night was "a big blur" to the victim, she recalled a bedroom window on the second floor of the apartment being opened, but was unable to use it to escape because she "would have got hurt."

The victim further described the night of the offense as "just constant battling trying to get from one point to another." The Defendant grabbed her hair, and the two eventually fell through the front door. The victim was then able to run to the parking lot to a neighbor's house, at which point she remembered calling 911.

The 911 call was played for the jury and admitted into evidence without objection. A woman named Mary Beth actually called 911 and is heard asking the victim her name. The victim then begins to speak to the 911 operator and describes the Defendant as an

"intruder" at her apartment.  At varying points during the call, the victim exclaimed, "[H]e's not supposed to be there and it took me like for the last two hours trying to get out of my apartment. . . .  [H]e destroyed everything. . . .  It took me forever to get out of the apartment."  Asked by the operator if the Defendant kept her locked in the apartment for two hours, the victim replied, "almost, it's been like that, we been (sic) fighting I been trying to get away for two hours.  Oh, my God!"  The victim identified several injuries sustained on the night in question.  Although she could not remember specific details, she said she was hit on the face and eye, bitten on the nose, and had bruises on both arms from defending herself.

On cross-examination, the victim admitted that the Defendant allowed her to go to the upstairs bathroom to examine her face.  She said the Defendant did not take her by the arm, she just "ran up the stairs."  She conceded that she could only remember "bits and pieces" of the night.  Asked if the only time she attempted to leave the apartment was when she got out, she said, "[r]ight.  I'd probably tried all night long, I just don't remember."  She explained that she was "happy to get out.  After a certain point of getting hit and dragged and beat and punched, it's just like eventually you just want to get the h[---] out."  The victim further acknowledged discrepancies between her testimony and the audio recording of the 911 call.  Although she initially thought she called 911, the 911 recording established a neighbor actually called.  She also agreed that the caller never said she saw the victim and the Defendant tumble out the front door of the apartment.

Metro Nashville Police Officer Ryan Koslowski testified that he and his partner, Officer Christopher Templin, received a call and responded to the victim's apartment a little after midnight on May 9, 2015.  As the officers were in route to the apartment, they encountered the Defendant walking east along Walton Lane.  The officers noticed that the Defendant met the description of the individual in the dispatch call and stopped to talk to him.  After verifying his name, officers placed the Defendant in the back of the police car.  Officer Koslowski noticed "fresh wounds" on the Defendant's knuckles.  The Defendant also appeared intoxicated and was "agitated" and "aggressive."  Once officers placed the Defendant in the car, they continued to the victim's apartment and encountered the victim standing in the parking lot of the apartment complex.  Officer Koslowski took photographs of the scene and noticed lamps knocked over, a broken remote control, blood on the door frame, and clumps of the victim's hair lying on the ground outside of the apartment.  Asked if he noticed any open, bleeding wounds on the victim, Officer Koslowski confirmed that the victim had injuries, but she was not bleeding.  He further confirmed that an ambulance was not called to the scene, and he was unsure where the blood in the apartment came from.  He said he briefly went upstairs in the apartment, and remembered it "being [in] disarray[.]"  However, he could not give an accurate

description. He said that he would have taken a photograph of the vanity had it been ripped off the bathroom wall.

Metro Nashville Police Officer Craig Amabile testified that he was the first officer to respond to the victim's apartment. When he arrived, he encountered the victim standing near the apartment steps in the parking lot trying to get his attention. He said she appeared "upset" and "fearful." He noticed the victim's hair had been "ripped out," and that she was bruised and crying. When Officer Amabile first spoke to the victim, she told him, "He may still be inside. He wouldn't let me leave."

Officer Templin of the Metro Nashville Police Department testified consistently with Officer Koslowski. Officer Templin additionally testified that the Defendant was taken back to the victim's apartment so officers could complete their investigation. As officers began to take photographs of the Defendant's injuries, he became "uncooperative," "aggressive," "agitated," and began "cursing." As a result, officers were unable to take the photographs. Officer Templin described the condition of the victim's apartment as having "obvious signs of struggle." He recalled a window being raised in the upstairs bathroom. When he spoke with the victim, she told him "she had got out of the window, tried to escape through the window." Asked if he remembered anything in particular about a mirror, he said he did not. Officer Templin admitted that while the victim showed signs of trauma, she was not bleeding. He also admitted that no photographs were taken of the Defendant's injuries, even though officers could have forced him to comply.

At the conclusion of proof, the jury convicted the Defendant as charged in the indictment. The trial court sentenced him as a Range I, standard offender to a concurrent term of nine years for aggravated kidnapping and eleven months, twenty-nine days for violation of an order of protection, for a total effective sentence of nine years in confinement. On January 6, 2017, the Defendant filed a motion for new trial, which was denied by the trial court on February 10, 2017. The Defendant filed an untimely notice of appeal on September 15, 2017, and on September 27, 2017, this court waived the timely filing requirement.

## ANALYSIS

The sole issue on appeal is whether the evidence is sufficient to sustain the Defendant's conviction of aggravated kidnapping. The Defendant argues that there is insufficient evidence to sustain his conviction because the State failed to establish that he substantially interfered with the victim's liberty. At best, he contends, the evidence established attempted aggravated kidnapping. The State responds, and we agree, that the

evidence presented was sufficient to establish the Defendant's conviction of aggravated kidnapping.

In resolving this issue, we apply the following well-established principles and rules of law. The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." Guilt may be found beyond a reasonable doubt in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and must reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996).

When reviewing issues regarding the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence." Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). The Tennessee Supreme Court has stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." Bland, 958 S.W.2d at 659 (citing State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973)). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)).

To convict the Defendant of aggravated kidnapping as charged in the indictment, the State was required to prove that the Defendant falsely imprisoned the victim as defined in Tennessee Code Annotated section 39-13-302, and the victim suffered bodily injury as a result. T.C.A. § 39-13-304(a)(4). False imprisonment occurs when a person knowingly removes or confines another unlawfully as to interfere substantially with the other's liberty. T.C.A. § 39-13-302(a). Whether the evidence presented establishes each and every element of kidnapping, including whether the interference was substantial or merely trivial, is a question for the jury. State v. White, 362 S.W.3d 559, 577 (Tenn. 2012).

First, the Defendant argues that the State failed to establish the element of substantial interference because during the course of the two-hour confinement, the victim was free to move about the apartment and never attempted to escape until she and the Defendant tumbled out the front door of the apartment. The State contends that it was for the jury to decide if the interference with the victim's liberty was substantial, and the fact that the victim was able to move about her apartment and failed to make several attempts to escape does not defeat the Defendant's convictions. We agree with the State.

Viewed in the light most favorable to the State, the evidence is sufficient to sustain the Defendant's conviction of aggravated kidnapping. The proof established that the victim suffered abuse at the hands of the Defendant for roughly two hours. Although the victim was unable to recall how particular injuries occurred, she remembered the Defendant hitting and biting her on the patio before passing out and awaking to the Defendant pressing her against the kitchen wall. The victim testified that she attempted to go upstairs "to get far away" and "create distance" from the Defendant, but he followed her and ripped the bathroom vanity off the wall. She further recalled the Defendant dragging her through the living room by her hair just before the two fell through the front door, at which point the victim, "got up and snatched [her] head and ran." During her testimony, the victim made several comments indicating her desire to leave the apartment. She testified that she tried to find her cell phone at one point because she "wanted to call the police to come get [the Defendant] out of [her] apartment so [she] c[ould] get out." She said she could never escape because the Defendant would not "let her . . . . [I]t was just constant battling trying to get from one point to another." Although the victim admitted that the only time she left is when she escaped through the front door, she added, "I'd probably tried all night long, I just don't remember." The victim's testimony was further corroborated by her 911 call, during which she exclaimed that she had been held against her will by the Defendant for over two hours.

Additionally, we must reject the Defendant's claim that there was no substantial interference with the victim's liberty because she was free to move about the apartment and failed to make multiple attempts to escape. This court has held that aggravated kidnapping does not require a victim to be removed for particular distance or any particular duration or place of confinement to establish substantial interference. State v. Taylor, 63 S.W.3d 400, 408 (Tenn. Crim. App. 2001) (citing State v. Dixon, 957 S.W.2d 532, 535 (Tenn. 1997)). Moreover, a victim need not be confined to a single space or attempt to escape. See State v. David Earl Scott, No. E2011-00707-CCA-R3-CD, 2012 WL 5503951, at *2-4, *8 (Tenn. Crim. App. Nov. 14, 2012), perm. app. denied (Tenn. Mar. 5, 2013) (finding evidence sufficient to convict defendant of aggravated kidnapping when victim was free to move about several areas of the home and never attempted to escape for fear of leaving her children behind); State v. William Davidson Hamby, Jr., No. M2014-00593-CCA-R3-CD, 2015 WL 1897334, at *4 (Tenn. Crim. App. Apr. 27,

2015), perm. app. denied (Tenn. Aug. 13, 2015) (victim was not required to attempt to escape and risk provoking the defendant in order to demonstrate her desire to leave). The jury was in the best position to evaluate and weigh the evidence presented, as well as consider all lesser included offenses to the charged crime, and we will not disturb the jury's finding. We conclude that a rational juror could have found that the Defendant substantially interfered with the victim's liberty so as to satisfy the elements of aggravated kidnapping beyond a reasonable doubt. The Defendant is not entitled to relief.

Next, the Defendant suggests that any interference with the victim's liberty was only incidental to the domestic assault under State v. White, 362 S.W.3d 559 (Tenn. 2012). The State counters, and we agree, that the Defendant's reliance on White is misplaced.

In White, the Tennessee Supreme Court held that the kidnapping statutes do not apply to a removal or confinement of a victim that is "essentially incidental" to that of an accompanying felony, such as rape or robbery. Id. at 576-77, 581. "[T]he removal or confinement [must have some] criminal significance above and beyond that necessary to consummate some underlying offense[.]" Id. at 577. The court explained that when a charge of kidnapping is coupled with another felony charge, trial courts must include jury instructions necessary to afford the defendant proper constitutional due process protection. Id. at 580. Ultimately, the determination of whether the evidence is sufficient to establish aggravated kidnapping as a separate offense is a question for the jury properly instructed under the law. Id. at 577.

Here, the Defendant does not suggest that the jury should have received the White instruction. Instead, he argues that every assault contains an element of the restraint of liberty and that if his conviction for aggravated kidnapping is permitted, the State would then result to charging every assault case as an aggravated kidnapping. We disagree. White is applied to cases where a defendant is charged with both kidnapping and an accompanying felony such as rape or robbery of the same victim. In those cases, the jury, after being given appropriate instructions, must decide if the kidnapping is essentially incidental to accomplish the accompanying felony. In the case sub judice, the Defendant was originally charged with both aggravated kidnapping and aggravated assault. However, before trial, the State dismissed the aggravated assault charges and amended the indictment to charge aggravated kidnapping.[1] Accordingly, because the Defendant was not charged with an accompany felony, White is not applicable. See State

---

[1] The Defendant was originally indicted for aggravated kidnapping, two counts of aggravated assault, interference with an emergency call, vandalism, and violation of an order of protection. The State amended the indictment the morning of trial to charge the Defendant with aggravated kidnapping and violation of an order of protection. The remaining charges were dismissed.

v. Teats, 468 S.W.3d 495, 496 (Tenn. 2015) (holding that White is not applicable to a kidnapping charge when a defendant is charged with kidnapping one victim and robbing another). Therefore, the only determination here is whether the evidence was sufficient to establish aggravated kidnapping, which as White acknowledged, is a question for the jury. As thoroughly detailed above, the jury in this case found the evidence sufficient to convict the Defendant as charged. Accordingly, the Defendant is not entitled to relief.

## CONCLUSION

After review, it appears that judgment forms for counts 2 through 5 were never entered. The record reflects that the Defendant was originally charged with aggravated kidnapping (count 1), aggravated assault (counts 2 and 3), interference with an emergency call (count 4), vandalism (count 5), and violation of an order of protection (count 6). Before trial, the trial court dismissed counts 2 through 5 and renumbered the remaining charges to reflect the charges as presented in this case. While the record contains judgment forms for the case before us, it does not include the judgment forms for the dismissed counts. Therefore, we remand for entry of judgment forms reflecting the dismissed counts of the indictment. In all other respects, the judgments of the trial court are affirmed.

_____
CAMILLE R. McMULLEN, JUDGE